# Chicago, R. I. & P. Ry. Co. v. Samuel H. Cleveland.

1. MASTER AND SERVANT—*Requisites of a Recovery for Defects in Appliances.*—In order to recover for an injury caused by defects in appliances, a servant must prove three propositions: First, that the appliance was defective; second, that the master had notice of such defect, or ought to have had notice; and third, that the servant did not know of the defect and had not equal means of knowing it with the master.

2. SAME—*Right of the Servant to Presume that the Master Has Performed His Duty in Furnishing a Reasonably Safe Place for Him to do His Work.*—Employes of a railroad company have a right to assume that the company has placed its "flag shanty" at a reasonably safe distance from its tracks, so that its employes in the ordinary performance of their duty will not be liable to injury by reason of its close proximity to the tracks.

3. SAME—*Knowledge of Dangerous Obstructions, a Question of Fact.*—Whether an employe of a railroad company at the time of an injury knew, or by the exercise of ordinary care ought to have known, that a building erected for the purpose of signaling trains was dangerously near the tracks, is a question of fact for the jury on the evidence.

4. SAME—*Anticipation of Danger While the Servant is Engrossed in His Duties.*—A foreman of a switching crew, having his attention drawn to his train, which had been cut loose by a sudden jerk of the engine, and his back turned to the "flag shanty," and being wholly engrossed in the performance of his duties, can not be reasonably expected to anticipate danger by leaning out of the gangway of the engine for the purpose of signaling to the brakeman on top of the cars, although he may have been generally familiar with his surroundings.

5. INSTRUCTIONS—*Omission of Elements Essential to a Recovery.*—When an instruction purports to give the different elements which, if found to exist, will authorize a recovery, it should omit no element essential to a recovery.

6. SAME—*When the Evidence is Close on Question of Fact.*—Where the evidence is close on the question as to whether a servant assumed the risk of injury it is important that the instructions should be accurate and not calculated to mislead the jury.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed December 6, 1900.

**Statement.**—Appellee, an employe as a switchman, of appellant, who was injured March 10, 1896, while in the per-

formance of his duties as a switchman, in making up trains on appellant's railroad, brought his action therefor, a trial of which before the court and a jury resulted in a verdict in his favor for $15,000 and judgment thereon, from which this appeal is taken.

The negligence alleged is that appellant maintained and permitted a flag shanty dangerously near the track of its road at and near the crossing thereof with Forty-seventh street, in the city of Chicago, and that by reason thereof the plaintiff, while in the discharge of his duties as switchman, and in the exercise of due care and caution, was brought in sudden and violent contact with said flag shanty and was thrown with great force and violence upon the ground and injured. The plea was the general issue.

Among other instructions given for the plaintiff was the following:

" 2. If the jury believe from the evidence that the plaintiff has made out his case as laid down in his declaration, then you must find for the plaintiff."

The court also refused the following instruction asked by the defendant, viz :

" 6. The court instructs the jury that the defendant is not bound to inform its employes of any obvious risks or dangers, and that if you find from the evidence that the plaintiff suffered the injury complained of because of the obviously close proximity of the flag shanty in question to the tracks, that he assumed the risk of injury therefrom, and your verdict should be not guilty."

Walker & Payne, attorneys for appellant.

Arthur B. Wilson and Crews & Crews, attorneys for appellee.

Mr. Justice Windes delivered the opinion of the court.

For appellant it is claimed that appellee assumed the risk of danger from the proximity of the flag shanty to appellant's railway tracks, and therefore that there could be no recovery, and numerous cases from courts of other

States are cited in support of the contention. We deem it unnecessary to discuss the decisions outside of Illinois inasmuch as the adjudications of the Supreme Court of this State, as we view them, are sufficiently applicable to the facts of this case to control its decision.

It appears from the evidence that appellee was at the time of the trial forty-one years of age, experienced in railroading, had been employed by appellant in the different positions of brakeman, switchman, conductor and yardmaster, in all nineteen years; that for twelve to sixteen months next before he was injured he was a member of a switching crew engaged in making up trains between Sixteenth street, Chicago, and Blue Island, a distance of about fifteen miles, and during that time had occasion to pass on one or the other of eleven tracks which run north and south and cross Forty-seventh street at right angles at or near the place of the accident, one or more times a day; was familiar in a general way with the several tracks at this point, and during that time knew that a tower house stood between the two main tracks near the crossing of Forty-seventh street, and that a flag shanty was built at the base of the tower house. This tower house and flag shanty at its base made a conspicuous object some twenty-five feet in height, and were plainly visible to any one passing along the railroad tracks, and were placed between the main tracks at this point because the large number of tracks made it necessary in order properly to protect the crossing. Beginning on the east, tracks Nos. 1 and 2 were for freight; Nos. 3 and 4, known as the main tracks, were for freight and passenger trains; No. 5 was a freight track and the six tracks to the west of it were known as yard tracks. The distance between the main tracks, Nos. 3 and 4, was thirteen feet, and the distance between the flag shanty and the track on its east was four feet, the clearance between the engine cab on which appellee was at the time of the injury, and the shanty, being twenty-three inches. The distance between the tower house and the railway track on the east was five feet and one inch. As to these differences there is some conflict in

C., R. I. & P. Ry. Co. v. Cleveland.

the evidence, but we think the preponderance of the evidence is as stated.   The tracks in question were used by three different railroads that run many trains daily over them, and  Forty-seventh street at this crossing had double track trolley street railway.   Similar shanties and a tower house to the one in question stood at different street crossings of appellant's railroad within the city limits, with which appellee was in a general way familiar.   The switching yards of the road extend from Forty-fourth to Fifty-first street, and including the crossing at Forty-seventh street.

On the day of the injury appellee, who was the foreman of the switching crew, which consisted of two other switchmen, the engineer and fireman, came north with his train from Blue Island, switching at different points along the line, and approached Forty-seventh street on track No. 3, immediately east of the flag shanty, intending to go two blocks north of that point and get some cars.

The engine was running backward toward the north, its head being to the south, at the rate of twenty-three or twenty-four miles an hour.   As it passed Forty-eighth street appellee was standing in the gangway between the engine and tender, the other two switchmen being on top of the box cars of the train.   Between Forty-eighth and Forty-seventh streets the engine gave a jerk, which caused it to break loose from the cars, though this was not seen by the switchman on the cars, and appellee put his head out in order to give a signal to this switchman.   He testified on this point as follows :

" I was standing in the gangway and looked over my shoulder and seen him upon top, and I leaned out.   There is a hand-rail there, you know.   I just got hold of that and leaned back that way, and motioned him to hold up the hind end of the train—get it stopped.   Just raised my hand; that is all I remember.   Here is the gangway, and I leaned back this way, just like that, and raised my hand up, and I had hold with this one, and it struck me here (indicating).   That is all I remember struck me.   Altogether I had been running up and down there about a year I guess.   I had been off of that run, however, and went

back on it again.   *   *   *   In going north, it (the shanty) was on the west side of the track I was on, and on the right side of the engine, I believe, and I leaned out on the right side of the engine; the west side that I leaned out.   I leaned out on the same side the shanty was on.   The foreman of a switch gang rides all over the train.   His place is anywhere and everywhere on the train.   It is usual for him to be on the engine and tender, as I was.   If I want to give a signal I give it with my hand.   That is the stop sign (indicating). I had to lean out when standing on the foot-board of the engine, for a man to see me.   I leaned out and gave them the stop signal.   Had to lean out so they could see me."

It also appears that as the train approached the crossing, the crossing flagman stood by the shanty waving his flag signaling the train that the crossing was clear; that the engineer saw the signal, but that appellee was engaged in looking up the cars upon the side track which he had to take and did not see the signaling, and at the very moment before the accident he was intent on giving the signal to the switchmen on top of the moving cars which had been separated from the engine.   Appellee testified that he did not know the distance between the flag shanty and the railroad tracks, although he says that he knew the shanty had been located at that point during all the time he was on that run, and that similar shanties were at different places along the road for the use of flagmen who watched the crossings.

By rule 20 of appellant it is provided that "all persons in the service of this company are required to give notice of any obstruction or defect on the road."

The foregoing is in substance the evidence in so far as it bears upon the question of assumed risk, and in our opinion, when all considered, presents a question for determination by the jury.   In the case of Goldie v. Werner, 151 Ill. 551, which is re-affirmed in the recent case of Howe v. Medaris, 183 Ill. 288, the Supreme Court, in speaking of the liability of the master to his servant, says:

"The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions:   First, that the appliance was defective; second,

that the master had notice thereof, or knowledge, or ought to have had; third, that the servant did not know of the defect and had not equal means of knowing with the master."

It does not appear to be seriously contended by counsel for appellant but that there was sufficient evidence to go to the jury upon the first and second of these propositions. Even if we are wrong in this respect as to the position of counsel, we think the evidence on these two points was sufficient to justify its submission to the jury. Counsel, however, insist that appellee knew that the flag shanty was dangerously near the railroad track, or in any event that he had equal means with appellant of knowing such fact.

It is true that appellee knew that the shanty in question was located between the tracks near Forty-seventh street, and that he was familiar, generally, with it, and, in a general way, with the location of the tracks with reference thereto, but he says that he did not know the distance between the shanty and the railway tracks, and on this point there is no evidence to contradict him. It does not appear that he ever had occasion to make any special or critical examination as to the distance between the shanty and the tracks, nor was he obliged so to do. Appellant, however, was bound to know what this distance was. Appellee had the right to assume that the railway company had performed its duty to him to furnish a reasonably safe place for him to work, that is, in this instance, the flag shanty was at a reasonably safe distance from the railroad tracks, so that, in the ordinary performance of his duty, he would not be liable to injury by reason of the dangerously close proximity of the shanty to the tracks. Whether he knew, or by the exercise of ordinary care he should have known, that the shanty was dangerously near the tracks, was a question for the determination of the jury on the evidence.

It was held in Coal Co. v. Haenni, 146 Ill. 625, that the servant does not assume the risk of injury unless he has knowledge not only of the defects but the dangers liable to result therefrom. To a like effect are Ill. Steel Co. v. Schymanowski, 162 Ill. 459; Ill. C. R. R. Co. v. Welch, 52 Ill.

184–6; R. R. Co. v Sanders, 166 Ill. 270–80; C. & E. R. R. Co. v. Hines, 132 Ill. 161–9; Whitney, etc., Co. v. O'Rourke, 172 Ill. 177; Dallemand v. Saalfeldt, 175 Ill. 310–17; Union Show Case Co. v. Blindauer, 175 Ill. 325–7; R. R. Co. v. Dudgeon, 184 Ill. 477–85, and cases cited; Ross v. Shanley, 185 Ill. 390–3, and cases cited; Chicago Edison Co. v. Moren, 185 Ill. 571–5; Swift v. O'Neill, 187 Ill. 337; C. B. & Q. R. R. Co. v. Gregory, 58 Ill. 272–7; Batchelor v. Union S. Y. & T. Co., 88 Ill. App. 396, and cases cited.

In the Sanders case, *supra*, a brakeman, while coupling cars, was injured by a defective track and cattle guard which it was claimed were in plain view and he could have seen had he looked, and the court say, "It is apparent when a brakeman undertakes to make a coupling he has no time to investigate the track and determine whether it is defective or safe. His whole attention is directed to the cars that are coming together, and the dangerous act he is required to perform, and it can not be expected that he will stop in the performance of his duty to examine the condition of the track," and held that whether or not the brakeman assumed the risk was one of fact properly submitted to the jury, and quote with approval the language of the court in the Hines case, *supra*, (which was a case of injury to a switchman in the railroad yards, caused by reason of an unfilled space between the ties of the railroad track,) to the effect that the servant may rely upon the master's performing his duty to furnish reasonably safe surroundings at the place where he does his work, and that the servant "is under no primary obligation to investigate and test the fitness and safety of the machinery, surroundings, etc., in the absence of notice that there is something wrong in that respect," and that the servant is entitled to assume that his master has furnished him with safe surroundings and "relieved him of investigation and inquiry in that regard, where, as in the present instance, the performance of his duty requires constancy of attention to other matters."

In the Dudgeon case, *supra*, in which a street car conductor was injured by a pile of paving stones near the

street railway track, it was claimed he had or should have had knowledge of such obstructions, and therefore assumed the risk; it was held that this was a question of fact for the jury. The court, after re-affirming the doctrine of the Haenni and Schymanowski cases, *supra*, quote with approval from the case of Texas, etc., Railway Co. v. Kenna, 52 S. W. Rep. 555, the following:

"The law imposes no obligation on the train crew, or any of them, to be on the lookout for such things (obstructions overhanging the track), but, on the other hand, they may give their whole undivided attention to the careful and diligent performance of their duties, relying on the master to give them a safe, clear and unobstructed track. This does not mean that if they see the danger or know thereof, or it is obvious to them, they are not required to avoid it by the exercise of ordinary care, but it means that they are not required to anticipate it, look for or expect it. It is not part of their duty to do so. The master must look to things like this for them, and he must do so at his peril."

In the Ross case, *supra*, where a bricklayer was injured by the caving in of a tunnel where he was working by reason of defective shoring, which, it was claimed, he knew was defective, being an experienced man, or could have known, by the exercise of ordinary care on his part, as well as the foreman under whom he worked, the court say: "Appellant's foreman was chargeable with a specific duty, to wit, that of exercising reasonable care to see that the place where he sent appellee to work was reasonably safe, and appellee had the right to rely upon the performance of such duty by appellant's foreman before he gave the order for him to work where he did. Appellee was not required to make a critical and careful examination of his surroundings at the place where he was sent to work by the foreman;" and held that the question of assumed risk was one for the jury, citing several of the above and other cases.

In the Batchelor case, *supra*, a switchman was injured by a switchstand near the railway tracks, and it was claimed that he assumed the risk, it appearing from the evidence of

the defense that he was entirely familiar with the switch-stand by which he was injured; but he testified that while he was familiar generally with the tracks and switchstands in the locality, he had never used this particular one, and had never had his attention attracted to it before he was struck by it. This court said: "It is not enough that the employe may know, or might have known by the exercise of ordinary care, of the location of the switchstand with reference to the car that he was getting upon, but he should have had knowledge of the risk or danger to which he was exposed by reason of the location of the switchstand with reference to the track;" and held that an instruction which omitted the element of the switchman's appreciation of the hazard or danger to which he was exposed, was erroneous.

In the very recent case of Swift, *supra*, the court say:

. "The term 'knowledge' as used in defining assumed risks, means no more than that all the facts and circumstances surrounding the given case must be sufficient to charge the employe with the required information. If the danger is obvious, knowledge of that fact will, of course, be attributable to the employe; but if, as already said, the risk is no more than that under which a prudent person would, under like circumstances, continue his employment, then certainly he can not, as a matter of law, be held to assume the risk."

The court held that although the servant knew of the defects by which he was injured and had made complaint thereof, his right of recovery did not depend on proof of an alleged promise to remedy such defects, but that it was a question for the jury to decide whether, under all the facts and circumstances, he knew of the extent of the danger to which he was exposed, and assumed the risk.

We do not regard the Illinois cases relied on by appellant as in conflict with the principle of the cases above referred to. The Supreme Court in the Howe case, *supra*, the latest and one most nearly in point, held that, under the evidence, the servant not only knew of the defect which caused his injury, but that "he had notice of the danger of the defective condition of the machine."

In the light of these authorities, the appellee, having his

attention drawn to his train of cars, which had been cut loose by the jerk of the engine, having his back turned to the flag shanty, and being wholly engrossed in the performance of his duties, it could not be reasonably expected, although he was generally familiar with his surroundings, that he would anticipate danger by leaning out of the gangway of the engine and signaling to the switchman on top of the cars. We think that, under all the circumstances shown, it can not be said, as matter of law, that he knew or appreciated the danger to which he was exposed. In any event, it is a matter upon which reasonable minds might well differ, and was therefore a question for the jury.

Appellee, against the objection of appellant's counsel, was permitted to offer evidence to the effect, in substance, that there was a rule or custom among railroads as to how far obstructions along the line of railroad should be from the track in order to insure safety to employes and others having occasion to pass along the road on a moving train. We think this evidence should not have been admitted, although it seems, under some of the earlier decisions in this State and in other States, that it is not improper. Under the recent case of C. & E. I. R. R. v. Driscoll, 176 Ill. 330, evidence of a like nature with reference to the construction of a butting post at the end of a stub track was held improper, and the court say:

" A railroad company can not be required to adopt any particular method of construction, or any particular contrivance or device, in order to be in the exercise of ordinary care. * * * One jury might find the construction a proper one, while another jury might find it an improper one, and the important engineering question of the manner of constructing a railroad would thus be left to the varying and uncertain opinions of jurors. The only question proper to submit to a jury in such cases is, whether the premises as they existed at the time of the injury were reasonably safe."

The situation and circumstances in this case were before the jury, and it should have been left to determine whether or not the shanty was at a reasonably safe distance from the track, without reference to any rule or custom of con-

struction, in order to secure safety, by this or any other railroad.

It is claimed that the plaintiff's second instruction quoted in the statement preceding this opinion, is erroneous, in that it omits an important element of appellant's defense, viz., that appellee assumed the risk.

This instruction has been repeatedly approved by the Supreme Court in a number of cases cited by appellee, viz., Laflin, etc., Co. v. Tearney, 131 Ill. 325, Penn. Co. v. Marshall, 119 Ill. 399–404, and Ry. Co. v. O'Sullivan, 143 Ill. 48–59, but the question here made does not seem to have been presented to the court in any of these cases.

It has been repeatedly held that when an instruction purports to give the different elements which, if found to exist, will authorize a recovery, it should omit no element essential to a recovery. Chicago Athletic Assn. v. Eddy Electric Mfg. Co., 77 Ill. App. 204–7; Pardridge v. Cutler, 168 Ill. 504–12; City of Chicago v. Schmidt, 107 Ill. 186–91.

In the Pardridge case, *supra*, the court say :

" If an instruction directs a verdict for either party, or amounts to such a direction, in case the jury shall find certain facts, it must necessarily contain all the facts which will authorize the verdict directed."

And speaking of the instructions under consideration, the court further say :

" A verdict for plaintiff would necessarily follow the instruction if the jury accepted it as their guide. There were other instructions given at the request of defendant, stating different rules, but they were simply contradictory of this one, and it was left to the jury to choose which one they pleased as their guide. Here was an instruction substantially directing a verdict regardless of defenses which there was evidence fairly tending to prove, and the error in such an instruction is not obviated by giving conflicting instructions."

The declaration alleges in substance only that appellant was negligent, that appellee was injured as a result of such negligence, and that he was at the time in the exercise of due care. If these were the only matters for the jury to consider, then under the decisions referred to by appellee

the instruction was correct; but it might be entirely true that appellant was negligent and that its negligence resulted in injury to appellee, and that the latter was in the exercise of due care, and still, if the risk was one of the ordinary hazards of his employment, which he assumed, there could be no recovery. To this effect, in substance, the court gave, at the request of appellant, an instruction numbered 12. It can not be told but that the jury was guided by the plaintiff's second instruction, which is wholly inconsistent with the appellant's instruction No. 12. The instruction for the appellant which leaves to the jury the question of whether appellee assumed the risk, does not cure the plaintiff's second instruction, since taken as a whole and read together, they fail to state the law correctly under the facts of this case. If the jury was guided by the plaintiff's second instruction, then they could reach a verdict for appellee without any reference to whether he assumed the risk or not. American S. Co. v. C. & A. R. R. Co., 177 Ill. 513-23; Gorrell v. Payson, 170 Ill. 213-19.

For appellee it is contended, under the authority of the Hines case, *supra*, the allegation of due care by implication includes an allegation that appellee had no knowledge of the defects or omissions by reason of which he was injured, and the jury finding the appellant guilty of negligence, impliedly found that appellee had no knowledge of such defects or omissions. It is true that the language of the court in the Hines case gives some color to this claim, but the court then had under consideration only a matter of pleading, and we think its decision should not be construed as sanctioning an instruction so well calculated to mislead the jury as is the one in the case at bar.

Under the evidence here it is a close question as to whether or not the appellee assumed the risk of injury from the flag-shanty, and in such case it is important that the instruction should have been accurate and not calculated to mislead the jury. Chicago C. Ry. v. Canevin, 72 Ill. App. 81-3, and cases cited.

As there may be another trial, we deem it our duty to

say that appellant's instructions ten and fourteen should not be given, as they omit the element of knowledge of the danger to which appellee was exposed by the shanty, and preclude a recovery if he knew, or by the exercise of ordinary care should have known, of the situation of the shanty. See Batchelor and Swift cases, *supra.*

We think there was no error in refusing appellant's sixth instruction.

Inasmuch as the cause must be reversed and remanded by reason of the giving of plaintiff's second instruction, and the admission of the evidence as to a rule or custom among railroads with reference to maintaining obstructions near the line of railway, it is unnecessary to consider the other questions discussed.   Reversed and remanded.