### Edmunds Manufacturing Company v. Peter McFarland.

#### Gen. No. 11,499.

1. CROSS-EXAMINATION—*when restriction of, improper.* Questions on cross-examination should be permitted to be answered where they pertain to the subject-matter of the direct.

2. CROSS-EXAMINATION—*when restriction of, improper.* Questions put upon cross-examination which tend to elicit answers which test the statements of the witness previously made upon direct, are proper and should be allowed to be answered.

3. ERROR—*what does not cure.* The fact that the successful party withdrew his objection, does not cure the error in the court's ruling in not permitting a proper question to be answered.

4. EXCLUSION OF EVIDENCE—*when ground for reversal.* In an action on the case for personal injuries, it is error to exclude evidence which was material as to the condition of the place at which the injury occurred.

5. IMPEACHMENT—*what competent by way of.* A written statement containing admissions material to a cause, admitted by the plaintiff to have been signed by him, is competent by way of impeachment; the question of its value is, however, for the jury to determine.

6. ASSUMED RISK—*when instruction improper as ignoring defense of.* Where the defense of assumed risk is relied upon, it is error to give to the jury an instruction which ignores such defense and directs a verdict regardless thereof.

Edmunds Mfg. Co. v. McFarland.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN L. HEALY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Reversed and remanded. Opinion filed February 10, 1905.

F. J. CANTY and E. E. GRAY, for appellant; J. C. M. CLOW, of counsel.

McARDLE & McARDLE, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

The facts of this case, as developed on the second trial, do not differ materially from the facts as they appeared on a former trial, and are clearly stated in the opinion of Presiding Justice Freeman in McFarland v. Edmunds Mfg. Co., 97 Ill. App. 629.

It would be impossible to comment upon the many errors disclosed by this record, in the rulings of the court upon evidence, without extending this opinion unreasonably. We must, therefore, confine ourselves to a few only of such rulings, and we make no attempt to discuss the others.

William Miller, a witness called by appellee, testified that he was working on the old roof with appellee, and saw him when he was injured. On his direct examination he described quite fully the work that was being done there at the time. After testifying that the uprights were about 16 feet apart he was asked on cross-examination: Q. "So that in between these upright posts there were joists that were not cut at all?" Appellee's counsel objected to the question as not cross-examination, and the court held that it was in the nature of an argument, and did not permit the witness to answer. The question was proper and should have been answered.

The same witness was asked on cross-examination the following question: Q. "The cut-off joists were only in those places where the uprights stood? Isn't that so?" This question was objected to as not cross-examination. Then the witness was asked: Q. "Did you know at that time?" Thereupon the court said, "That won't do, either," and sustained the objection.

It is due to appellee's counsel to say that he announced to the court that he had no objection to the last form of the question; but by his groundless objection to the question as originally put, the court was asked to apply an erroneous rule to the examination, and the court persisted in his ruling after the question had been modified and the objection withdrawn.

· Appellee had testified that he had helped to tie up the end of a joist or rafter with a rope and that he couldn't know what was the matter with it. He was then asked the following question: Q. " Couldn't you see? " An objection was made to this question and sustained by the court. The question was put to the plaintiff in the case and was well calculated to test his previous statement that he could not know what the matter was with the joists or rafters which he had helped tie up.

Arbuckle, a carpenter, was called as a witness for the defense and was asked, among other things: Q. "What was the bridging there for?" An objection to the question was sustained. Further on the witness was asked: Q. "What held these joists together? I am speaking of a short joist, for instance. What held it up after the flooring had been pried up off it, if you know? " An objection was sustained to this question. These rulings excluded very material evidence on behalf of appellant.

Many other questions were asked this witness as to material facts and conditions at the building at the time of the accident to appellee, and on objection were ruled out, as we think erroneously; but we cannot take the time to refer to them in detail.

Appellee, while on the witness stand, had identified the following statement and admitted that he had signed it:

" CHICAGO, Aug. 12, '95.

Peter McFarland. I reside at No. 5 Lisle street, in the rear. I was employed as a laborer on the Robert building at Twenty-second and Union streets. I was injured there June 31st. I was working on the old roof, tearing up the flooring on the south side of the building. We commenced to take the flooring up from the south wall, and cleaned up

as we came back.   The south ends of the joists rested on some 2x4's, or else they were in the wall, and the north end of the joists rested on a girder.   The building was two stories high, and two more stories were built on, and some posts were put down through the old roof.   Where these posts had been put in the joist at this post was cut off. There was bridging all along between the joists, about half way between the south wall and the girder.   The accident happened shortly after 1 o'clock P. M., and I had only been at work a few minutes.   I was ripping up the flooring and turning it over.   We had ripped up all the flooring from the joists between the wall and the girder, and I had gone to get some of the boards to carry to the front, when I stepped on one of the short joists and it gave way with me, and I fell to the floor about sixteen feet.   I noticed one of the short joists the day before the accident, near the west end of the building, and I took a rope and tied it up to make it secure.   These short joists were at every place where the upright posts were put in.   I had been working at the place of the accident most all the forenoon.   It was the same all over the roof, that there was short joists at every upright post, and I think there was about four uprights in the section I was working in, which was about seventy-five feet long.   I had been at work on the building for about two and a half weeks before the accident, but the day of the accident was the first I worked at tearing up floors.   I had no instructions to tie up the short joists, and the one I tied up a day or so before the accident I did for my own safety and the safety of others, as I knew the joists were short at the upright posts, and I took that trouble to prevent accident.   The short one I stepped on was not tied up.   I was brought home in the patrol wagon, and a fellow named Granville came with me.   I do not know who called the doctor, but I think maybe he was called before I was taken home.

                                          PETER McFARLAND.
    Attest:   L. D. PUGH."

    This signed statement of appellee was offered in evidence by appellant at three separate and distinct times during the progress of the trial and ruled out by the court.   When the paper was first offered, it was not technically admissible, because appellee was still putting in evidence on his original case, but the objection to the evidence was not made on that ground.   Subsequently, while appellant was

offering evidence in its defense, the statement was again offered. At this time there is no question but that it should have been received in evidence. Appellee had admitted his genuine signature appeared at the bottom of the statement and this was sufficient to make it competent. Webster Mfg. Co. v. Schmidt, 77 Ill. App. 50; Hanlon v. Ehrich, 80 N. Y. Sup. 692; I. C. Ry. v. Wade, 206 Ill. 523. The competency of the evidence is too well settled to admit of doubt, or citation of authorities in support of it. It would seem that the court must have confused, as counsel do, the question of its competency, with its probative force and value, two very distinct questions. The question of its competency was for the court, and its value as evidence was for the jury to decide. However that may be, it is familiar law that the statement should have been received in evidence, and its exclusion was reversible error.

At the plaintiff's request the court gave to the jury the following instruction:

"The court instructs the jury that if you believe, from the preponderance of the evidence in this case, that the plaintiff while in the exercise, if he was in the exercise of ordinary care for his own safety, was injured, by or in consequence of the negligence of the defendant as charged in the declaration in manner and form, and under the circumstances as charged therein, then you should find the defendant guilty."

This instruction does not properly state the law applicable to this case. It leaves out of consideration the question of assumed risk in the case and authorizes the jury to ignore that question and treat it as not in the case. It directs a verdict for the plaintiff without containing all the necessary elements upon which to base a verdict. The instruction was misleading. C., R. I. & P. Ry. v. Cleveland, 92 Ill. App. 308; C. & A. Ry. v. Stallings, 90 Ill. App. 611; Joliet Steel Co. v. Shields, 134 Ill. 214; C. & E. I. Ry. v. Heerey, 203 Ill. 493.

For the errors indicated the judgment must be reversed and the cause remanded for a new trial.

*Reversed and remanded.*