FUSSELMAN, APPELLANT, *v.* YELLOWSTONE VALLEY
LAND & IRRIGATION CO., RESPONDENT.

(No. 3,731.)

(Submitted January 22, 1917.  Decided February 16, 1917.)

[163 Pac. 473.]

*Negligence—Trespassing Children — Turntable Doctrine—Complaint—Circumstantial Evidence—New Trial—Newly Discovered Evidence—Affidavit—Insufficiency.*

Real Property—Trespassers—Duty Owing by Owner.
1.  Anyone who goes upon the private property of another without lawful authority or without permission or invitation, express or implied, is a trespasser to whom the owner owes no legal duty, until his presence is discovered, other than to refrain from wanton or willful acts which occasion injury.

Same—Presence upon by Invitation—Duty of Owner.
2.  A person upon the private property of another by invitation, express or implied, is there rightfully, and to him the land owner owes the positive duty to exercise reasonable care for his safety.

Same—Turntable Doctrine—Upon What Based.
3.  Liability under the doctrine of the turntable cases *held* to be founded upon the theory of implied invitation.

Actionable Negligence—Complaint—Contents.
4.  Actionable negligence arises only from a breach of legal duty; and to state a cause of action for damages resulting from negligence, the complaint must disclose, by a statement of facts—not legal conclusions—the duty, a breach and resulting damages.

Same—Turntable Doctrine—What Complaint must Contain.
5.  To state a cause of action under the doctrine of the turntable cases, it is not enough for the complaint to show that the premises were attractive to children or that children generally were attracted thereto, but it must show that the attraction lured the injured child there with the result complained of, the facts pleaded disclosing the causal connection between the negligent act and the injury.
    [As to liability for injuries to trespassing children, see note in 49 Am. St. Rep. 416.]

Same—Evidence—Insufficiency.
6.  Evidence in an action for the drowning of a child in the canal of an irrigation company, *held* insufficient to support a verdict on the theory that it fell in where the canal crossed a street, which should have been, but was not, covered, as required by a city ordinance.

Same—Circumstantial Evidence—When Sufficient.
7.  Where circumstantial evidence is relied on to establish actionable negligence, the circumstances must tend directly to establish the cause of action; where they have an equal or stronger tendency

to support some other theory inconsistent with the one upon which plaintiff relies, the burden resting upon him is not satisfied.

New Trial—Newly Discovered Evidence—When Insufficient.

8.   One moving for a new trial on the ground of newly discovered evidence, must in his affidavit show that he exercised due diligence before trial to procure the newly discovered evidence by stating the particular efforts he made in that regard; the bare statement that he made due inquiry being insufficient.

*Appeal from District Court, Park County, in the Ninth Judicial District; Ben B. Law, Judge of the Ninth District, presiding.*

ACTION by E. W. Fusselman against the Yellowstone Valley Land & Irrigation Company. From an adverse judgment and an order denying a new trial, plaintiff appeals. Affirmed.

*Messrs. Walsh, Nolan & Scallon,* for Appellant, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

As to the attractiveness of the place for children, so as to require the company to exercise reasonable precautions against children of tender years falling into the canal: At the outset, we admit that on this proposition the cases seem to be absolutely in conflict. We believe, however, that the best reasoning favors our contention that the company was required to exercise reasonable care to prevent the drowning of children in the canal, when we consider the conditions locally and the accidents which from time to time occurred on account of children falling into the ditch. (Shearman & Redfield on Negligence, sec. 705; Thompson on Negligence, secs. 1030, 1031; *City of Pekin* v. *McMahon,* 154 Ill. 141, 45 Am. St. Rep. 114, 27 L. R. A. 206, 39 N. E. 484; *Tucker* v. *Draper,* 62 Neb. 66, 54 L. R. A. 321, 86 N. W. 917; *Price* v. *Atchison Water Co.,* 58 Kan. 551, 62 Am. St. Rep. 625, 50 Pac. 450; *Franks* v. *Southern Cotton Oil Co.,* 78 S. C. 10, 12 L. R. A. (n. s.) 468, 58 S. E. 960; *Donk Bros. Coal & Coke Co.* v. *Leavitt,* 109 Ill. App. 385; *Tucker* v. *Draper,* 62 Neb. 66, 54 L. R. A. 321, 86 N. W. 917; *Palermo* v. *Orleans Ice Mfg. Co.,* 130 La. 833, 40 L. R. A. (n. s.) 671, 58 South. 589; *Bjork* v. *Tacoma,* 76 Wash. 225, 48 L. R. A. (n. s.)

331, 135 Pac. 1005; *Capp* v. *St. Louis,* 251 Mo. 345, Ann. Cas. 1915C, 245, 46 L. R. A. (n. s.) 731, 158 S. W. 616.)

The evidence, though circumstantial, was sufficient to warrant the submission of the case to the jury upon the theory that the child fell in at a point on Yellowstone Street, which the defendant company had, in violation of a city ordinance, neglected to cover over. (*Choctaw etc. R. Co.* v. *McDade,* 191 U. S. 64, 48 L. Ed. 96, 24 Sup. Ct. Rep. 24; *Philadelphia & R. R. Co.* v. *Huber,* 128 Pa. St. 63, 5 L. R. A. 439, 18 Atl. 334; *Jones* v. *New York etc. R. R. Co.,* 92 N. Y. 628; *Crucible Steel Forge Co.* v. *Moir,* 219 Fed. 151, 153, 135 C. C. A. 49, 8 N. C. C. A. 1006; *Cincinnati etc. R. Co.* v. *Jones,* 192 Fed. 769, 47 L. R. A. (n. s.) 483, 113 C. C. A. 55, 3 N. C. C. A. 840; *Felton* v. *Newport,* 105 Fed. 332, 44 C. C. A. 530; *Pittsburgh, C. C. & St. L. R. Co.* v. *Scherer,* 205 Fed. 356, 123 C. C. A. 484.)

*Mr. Fred L. Gibson* and *Messrs. Miller & O'Connor,* for Respondent, submitted a brief; *Mr. Gibson* argued the cause orally.

So far as Montana has adopted the rule announced in the "turntable cases," it has limited it to injuries caused by "an unguarded, dangerous machine or other dangerous thing peculiarly attractive to children of the class to which the injured one belongs." (*Gates* v. *Northern Pac. Ry. Co.,* 37 Mont. 103, 94 Pac. 751.) An open flume maintained on defendant's land is not such a dangerous appliance attractive to children as to render defendant liable for the death of a child three years and nine months of age, by being carried down the flume while playing near the same as a trespasser. (*Salladay* v. *Old Dominion Copper Min. Co.,* 12 Ariz. 124, 100 Pac. 441.) And the great majority of cases in which it has been sought to extend the doctrine of the "turntable cases" to include dangers from ponds, reservoirs and waterways hold that such dangers are not such as are within the meaning of the turntable case. (*Sullivan* v. *Huidekoper,* 27 App. D. C. 154, 5 L. R. A. (n. s.) 263; *Schauf's Admr.* v. *Paducah,* 106 Ky. 228, 90 Am. St. Rep. 220, 50 S. W.

42; *Overholt* v. *Vieths,* 93 Mo. 422, 3 Am. St. Rep. 557, 6 S. W. 74; *Moran.*v. *Pullman Palace Car Co.,* 134 Mo. 641, 651, 56 Am. St. Rep. 543, 33 L. R. A. 755, 36 S. W. 659; *Greene* v. *Linton,* 7 Misc. Rep. 272, 27 N. Y. Supp. 891; *Klix* v. *Nieman,* 68 Wis. 271, 276, 60 Am. Rep. 854, 32 N. W. 223; *McCabe* v. *American Woolen Co.,* 124 Fed. 283, 132 Fed. 1006, 65 C. C. A. 59.)

The enactment of ordinance No. 99 and its acceptance by the grantee of the privileges therein contained under the terms therein set forth constituted merely a contract between the city and the grantee, and the obligation imposed upon the grantee (defendant) of covering its ditch in the streets and alleys is not an obligation or duty imposed by law, for the violation of which third persons have a right of action for damages caused thereby (*Melville* v. *Butte-Balaklava Copper Co.,* 47 Mont. 1, 130 Pac. 441; *Conway* v. *Monidah Trust,* 47 Mont. 269, L. R. A. 1915E, 500, 132 Pac. 26), but is an obligation imposed upon the grantee of the easement by the contract, and the violation of the contract in this particular is one with which third persons have nothing to do. The same rules govern contracts made by municipalities as control agreements made by individuals.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1913 the Yellowstone Valley Land & Irrigation Company maintained a canal for conveying water from the Yellowstone River for irrigation purposes. The canal passed through a portion of the city of Livingston and along and across many streets and alleys. Permission to run the canal through the city had been obtained, and Ordinance No. 99 had been adopted defining the rights and duties of the company within the city. Among other things, it was required to keep the canal covered wherever it ran in or across a street or alley, but this duty had been neglected, and there was not any covering over the canal where it crossed Yellowstone Street or Gallatin Street or in the vicinity of the intersection of those streets, except a bridge fourteen feet in length near the center of Yellowstone Street. On May 23,

1913, the dead body of Birdena Fusselman was taken from the canal at a point down the canal and 1,100 feet east of the Yellowstone Street bridge. This action was brought by the father of the deceased to recover damages. Issues were framed and a trial had. At the conclusion of the evidence the district court directed a verdict for the defendant, and plaintiff appealed from the judgment entered thereon and from an order denying his motion for a new trial. Appellant advances two theories, upon either of which he insists that a case was made for the jury.

1. It is first contended that even though the deceased was upon the private property of the defendant at the time she fell into the canal, liability may nevertheless attach if the canal, as located with the water flowing in it, was peculiarly attractive to children of tender years, if it was dangerous, if small children were accustomed to play about it and were likely to fall into it and be drowned, and if these facts were known to the defendant or should have been known to it and reasonable care was not taken to prevent injury. In other words, it is sought to invoke the rule announced in *Sioux City & P. R. Co.* v. *Stout,* 17 Wall. (84 U. S.) 657, 21 L. Ed. 745.

The doctrine of the turntable cases proceeds upon the assumption that the injured party, if an adult, would have been a trespasser, but because of his tender years and indiscretion is not subject to the rule of liability applicable to trespassers. [1] Anyone who goes upon the private property of another without lawful authority or without permission or invitation, express or implied, is a trespasser to whom the land owner owes no legal duty until his presence is discovered. He is only required to refrain from wanton or willful acts which occasion injury. (*Egan* v. *Montana Cent. Ry. Co.,* 24 Mont. 569, 63 Pac. [2] 831.) A person upon the private property of another by invitation, express or implied, is there rightfully, and to him the land owner owes the positive duty to exercise reasonable care for his safety. (*Montague* v. *Hanson,* 38 Mont. 376, 99 Pac. 1063.) It is not contended that the defendant or any officer or agent of it knew of the presence of Birdena Fusselman upon the

right of way or along the canal immediately, or at any time, before her death, or that her death resulted from any wanton or willful acts of the defendant. Neither is there any contention made that the company ever expressly invited the deceased to come upon its property; so that the only possible theory upon which liability may attach under this view of the case is that the deceased was at the canal pursuant to an implied invitation extended to her by the canal company, and that the invitation was to be implied from the acts of the defendant in maintaining the canal under the circumstances disclosed.

In passing, it may be said that no other subject within the domain of the law has given rise to greater divergence of judicial opinion than the doctrine of the *Stout Case*. In some jurisdictions it is repudiated altogether; in others applied strictly; in others adopted in a more or less modified form; while in others it has been extended to such a variety of cases that it has lost its original identity and has become a new rule of the substantive law of negligence. The courts which give recognition to the doctrine are not agreed upon the principle which underlies it and encounter difficulty in defining the doctrine itself. By some of these courts it is treated as an exception to the general rule of nonliability to trespassers—an exception born of necessity and applied out of consideration for the irresponsibility of infancy. Others invoke the doctrine only in cases where an invitation can be implied from the acts of the land owner, upon the theory that, "what an express invitation would be to an adult, the temptation of an attractive plaything is to a child of tender years." (*Keffe* v. *Milwaukee etc. Ry. Co.*, 21 Minn. 207, 18 Am. Rep. 393.) So much has been written upon the subject that we shall not attempt to add anything new to the discussion. To review the decided cases is useless, and to reconcile them is impossible. An extended reference to them will be found in *Bottum's Admr.* v. *Hawks*, 84 Vt. 370, Ann. Cas. 1913A, 1025, 35 L. R. A. (n. s.) 440, 79 Atl. 858, and in the notes to the same case in Ann. Cas. 1913A, 1032.

In the trial of the *Stout Case,* Judge Dillon instructed the jury that notwithstanding the child was upon the private property of the company at the time he was injured, liability would attach if the jury found: (a) That the turntable, in its then condition, situation, and place, was a dangerous machine, which, if left unguarded and unlocked, would be likely to cause injury to children; (b) that the company knew or ought to have known that children resorted to the turntable to play, and that they would likely be injured by it; and (c) that the company employed no means to keep children away or to prevent accidents to them. (*Stout* v. *Sioux City & P. R. Co.,* 2 Dill. 294, Fed. Cas. No. 13,504.) In the supreme court the instructions were approved as sound and judicious, and reference is made to the rule of reasonable care—the rule which measures the duty of the land owner to one rightfully upon his property. The court did not assume to state a new rule of law, but sought justification in principles announced and applied in decided cases to which reference was made, among them *Lynch* v. *Nurdin,* 1 Q. B. 29, 41 E. C. L. 422. The facts of that case were that the defendant's servant left a horse and cart unattended in the street. The plaintiff, a child of tender years, climbed upon the cart in play. Another child struck the horse, causing it to start abruptly, whereby the plaintiff was thrown to the ground and injured. The defendant was held liable, though no stress was laid upon the fact that the horse and cart were in a public street. Upon the question of negligence Chief Justice Denman said: ''For if I am guilty of negligence in leaving anything dangerous in a place where I know it to be extremely probable that some other person will unjustifiably set it in motion to the injury of a third, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but unquestionably against the first.'' And, disposing of the contention that the negligence of the plaintiff in mounting the cart and so committing a trespass had contributed to the injury, he observed: ''The answer is that, supposing that fact ascertained by the jury, but to this extent: That it merely

indulged the natural instinct of a child in amusing himself with the empty cart and deserted horse, then we think that the defendant cannot be permitted to avail himself of that fact. The most blamable carelessness of his servant having tempted the child, he ought not to reproach the child with yielding to that temptation. He has been the real and only cause of the mischief.''

Though in the *Stout Case* particular emphasis was not laid upon the peculiar attractiveness of the turntable, and the foundation principle upon which liability was made to depend was not sharply defined, the language employed and the references given seem to require the conclusion that the attractiveness of the machine was deemed to be an essential element, and that the theory of implied invitation must have prompted the conclusion reached. The *Stout Case* was decided in 1873. Later a case presenting substantially the same facts came before the supreme court of Minnesota (*Keffe* v. *Milwaukee etc. Ry. Co.*, above), and the rule of liability was there made to rest upon the theory of implied invitation. Among other things the court said: ''The defendant therefore knew that by leaving this turntable unfastened and unguarded, it was not merely inviting young children to come upon the turntable, but was holding out an allurement, which, acting upon the natural instincts by which such children are controlled, drew them by those instincts into a hidden danger; and having thus knowingly allured them into a place of danger, without their fault (for it cannot blame them for not resisting the temptation it has set before them), it was bound to use care to protect them from the danger into which they were thus led, and from which they could not be expected to protect themselves.''

In his work on Torts, Judge Cooley referred approvingly to the decision in the *Keffe Case,* and under the title ''Invasion of Rights in Real Property'' said: ''Every retail dealer impliedly invites the public to enter his shop for the examination of his goods, that they may purchase them if they see fit. * * * So every man, by implication, invites others to come to his house

as they may have proper occasion, either of business, of courtesy, for information, *etc.* * * * In the case of young children and other persons not fully *sui juris,* an implied license might sometimes arise when it would not in behalf of others. Thus, leaving a tempting thing for children to play with exposed, where they would be likely to gather for that purpose, may be equivalent to an invitation to them to make use of it.'' (Cooley on Torts, 303.)

In the first edition of Thompson on Negligence, published in 1880, the author, referring to *Townsend* v. *Wathen,* 9 East, 297, and *Stout* v. *Railroad Co.,* above, said: "It would be a barbarous rule of law that would make the owner of land liable for setting a trap thereon, baited with stinking meat, so that his neighbor's dog, attracted by his natural instincts, might run into it and be killed; and which would exempt him from liability for the consequences of leaving exposed and unguarded on his land a dangerous machine, so that his neighbor's child, attracted to it and tempted to intermeddle with it by instincts equally strong, might thereby be killed or maimed for life.'' (1 Thompson on Negligence, 305.)

In *Union Pac. Ry. Co.* v. *McDonald,* 152 U. S. 262, 38 L. Ed. 434, 14 Sup. Ct. Rep. 619, the principles of the *Stout Case* were approved and applied. *Lynch* v. *Nurdin* was again analyzed and relied upon, and the language from that case, from *Keffe* v. *Milwaukee etc. Ry. Co.,* and from Cooley and Thompson above was quoted to sustain the position taken. It should now be deemed to be settled, so far as the federal courts are concerned, that the doctrine of the *Stout Case,* as amplified in the *McDonald Case,* is the law upon the subject; that the attractive character of the dangerous instrumentality which causes the injury is an essential element of the doctrine, and that the doctrine has its foundation in the theory of implied invitation.

*Lynch* v. *Nurdin* was decided in 1841. In 1909 *Cooke* v. *Midland G. W. Ry. Co.,* involving the question of the liability of the railway company for an injury to a child while playing upon an unlocked turntable on the defendant's premises, came before

the House of Lords. The defendant was held liable upon the theory of implied invitation, and *Lynch* v. *Nurdin* was relied upon as direct authority for the doctrine announced that a land owner who maintains on his premises a dangerous machine peculiarly attractive to children of immature years, and who knows that such children are accustomed to play about and upon it and are likely to be injured by it, owes to such children the duty to exercise ordinary care for their safety. ([1909] App. Cas. 229, 15 Ann. Cas. 557.) The doctrine was invoked in this court for the first time in *Driscoll* v. *Clark,* 32 Mont. 172, 80 Pac. 1, 373, but we held that the facts pleaded did not bring the case within the rule, though the doctrine itself received the tacit approval of a majority of the court. The same conclusion was reached in *Gates* v. *Northern Pac. Ry. Co.,* 37 Mont. 103, 94 Pac. 751, and in *Nixon* v. *Montana W. & S. W. Ry. Co.,* 50 Mont. 95, Ann. Cas. 1916B, 299, 145 Pac. 8. In *Martin* v. *Northern Pac. Ry. Co.,* 51 Mont. 31, 149 Pac. 89, we reviewed an instruction of the trial court designed to announce and apply the doctrine, but held that it omitted an essential element. In every one of these cases we proceeded upon the assumption that the doctrine is grounded upon the theory of implied invitation, and though it may not appear altogether logical to imply an invitation where none was intended to be extended, still in this jurisdiction the position is fortified somewhat by the rule of law crystallized in the statute, which declares that it will be presumed "that a person intends the ordinary consequence of his voluntary act." (Rev. Codes, sec. 7962.) This rule is applied in civil cases, and though the presumption is a disputable one, it furnished sufficient foundation for a *prima facie* case until contradicted.

The doctrine of the turntable cases is the rule of law in England, in our federal courts, in by far the greater number of the state courts where it has been considered, and has received the tacit approval of the majority of this court. We are satisfied that justification for the doctrine can be found only in the theory of implied invitation, and upon the assumption that in a proper case the doctrine will be applied in this jurisdiction

upon that theory, it is insisted by counsel for respondent that the complaint does not state facts sufficient to bring the present case within the doctrine.

It is the rule, recognized generally, that actionable negli-
[4]  gence arises only from a breach of legal duty, and to state a cause of action for damages resulting from negligence, it is necessary that the complaint disclose the duty, the breach, and the resulting damages. The facts, and not legal conclusions, must be stated, and it is therefore necessary to set forth suffi-cient facts from which it can be said, as a matter of law, that the defendant owed to the injured party a duty arising from some legal relation existing at the time of the injury. It is not
[5]  sufficient to say that the defendant impliedly invited the deceased to come upon the property. An invitation not accepted or acted upon cannot create any legal relationship whatever. Neither is it sufficient to show that children generally were at-tracted to the dangerous instrumentality, in order to make out a case under the turntable doctrine as we have defined it. To impose liability upon the defendant for the death of Birdena Fusselman it must be made to appear, among other things, that a legal duty was owed to her, and this could arise only from the maintenance of a dangerous instrumentality peculiarly attrac-tive to children of tender years and which did lure or attract her to her death. It is not sufficient to charge negligence in the abstract. The breach of duty relied upon must have been the proximate cause of the injury, and the facts pleaded must dis-close the causal connection between the defendant's negligent act and the injury complained of. Though the canal may have been ever so attractive to children, unless it was that attraction which lured the deceased to her death, the doctrine would have no application.

It is a general rule of pleading in actions for damages for injuries received upon the defendant's property that the com-plaint must disclose by what right the injured party was upon the premises. (14 Ency. Pl. & Pr. 339; 29 Cyc. 567.) In fail-ing to allege that Birdena Fusselman was attracted to the canal

or that by reason of its peculiar attractiveness she went upon the canal and met her death, the complaint fails to state a cause of action under the doctrine of the turntable cases.

2. The other theory adopted by the appellant is that the child **[6]** fell into the canal while she was in Yellowstone Street near the bridge and at a point where the canal was not protected by a covering or barrier; that she was drowned and her body carried by the water to the point where it was found; and upon this theory it is sought to fasten liability upon the company for its negligence in failing to comply with the city ordinance.

Since the ordinance required the canal to be covered only where it ran in or across a street or alley, the burden was cast upon the plaintiff, in the maintenance of this theory, to prove that the child was in a street or alley at the time she fell into the canal. To sustain this burden, plaintiff offered evidence of the following facts:

The Fusselman home is 700 feet south of the Yellowstone Street bridge, and 226 feet south and west of the bridge is a garage. About 5:30 o'clock in the afternoon of May 23 the deceased, three years and three months old, and her playmate, Genevieve Rowe, four years old, were taken from near the Fusselman residence to the garage, and soon afterward were seen playing in Gallatin Street, about midway between the garage and the bridge, picking small white flowers—referred to by some of the witnesses as daisies. About 6 o'clock the Rowe child returned to its home near the garage apparently much excited. The absence of the deceased was noticed about the same time, and at 6:30 the body was recovered from the canal at a flume where it had lodged against a screen. Mrs. Rowe, a witness for plaintiff, testified that, aiding in the search for the missing child, she and Mrs. Fusselman went to the canal in Yellowstone Street. Her testimony then continues: "We went just a few feet west of the bridge and found on the edge of the bank there quite a bunch of white flowers—I believe they call them lilies. Q. Do you know whether or not they were fresh looking? A. They were quite fresh. I should say it was three and one-half or four feet

west of the bridge we found those little lilies, and they were right on the bank. Those lilies or lilies like them were growing on Gallatin Street at that time around our barn and all over the little flat where the street is.''

It is insisted that from these facts and circumstances the inference is a legitimate one that after picking flowers in Gallatin Street, the two children proceeded on to the Yellowstone Street bridge, that the deceased fell into the canal near the bridge, and that the flowers found by Mrs. Rowe were dropped by the deceased. In their brief, counsel for appellant refer to the *freshly picked daisies* found by Mrs. Rowe as furnishing strong circumstantial evidence that the child fell into the canal at the point where the flowers were found; but it is to be observed that Mrs. Rowe was not asked if the flowers were plucked, or were growing at the place indicated, and it is only an inference from her testimony that they were picked flowers, and another inference that the lilies to which she referred were the daisies mentioned by other witnesses. The allegations of the complaint and the proof are that children of the neighborhood were accustomed to play along the canal and on the streets and unoccupied lots along or near the canal, and if we are to assume that the flowers found by Mrs. Rowe had been plucked recently, what justification can there be for saying that they were left there by the deceased rather than by someone else? Considering that the child's body was found 1,100 feet from the place where the flowers were, that she could have approached the canal at any point within that distance, and that it was unguarded throughout, we think it could not be more nor less than a guess to say from this evidence that the accident occurred at or near the bridge rather than at some other point, not in a street or alley.

Actionable negligence may be shown by circumstantial evi-
[7] dence, but the circumstances must tend directly to establish the cause of action. The burden of proof is upon the plaintiff, and is not satisfied if the conclusion rests merely upon conjecture or speculation, or if the facts and circumstances have an

equal or stronger tendency to support some other theory inconsistent with the one upon which plaintiff relies. (*Shaw* v. *New Year Gold Mines Co.,* 31 Mont. 138, 77 Pac. 515; *Gilmore* v. *Ostronich,* 48 Mont. 305, 137 Pac. 378.)

3. Error is predicated upon the refusal of the court to grant **[8]** a new trial upon the ground of newly discovered evidence. Maude Schanelec and Gertrude Husted each made affidavit to facts discovered by them on the evening of May 23, 1913—facts which would have been material to plaintiff in the trial of this case. In his affidavit in support of the motion, plaintiff says: "I am the plaintiff in the above-entitled action. I made diligent inquiry before the trial of said cause took place to obtain evidence to show that my little girl fell into the ditch in which she was drowned, and especially as to the place where she did fall in. The only evidence that I was able to obtain as to the place where the child fell in was the evidence of Mrs. Rowe, who testified to finding a bunch of lilies on the bank of the ditch a short distance west of the bridge crossing Yellowstone Street. That since the trial of said cause I learned that Maude Schanelec and Gertrude Husted had some information as to where the child fell into the ditch, and immediately on getting that information I went to see them and learned from them as to the footprints on the bank, and also as to the markings on the edge of the ditch, as shown by their affidavits. This information came to me, as already stated, for the first time after the case was tried."

In *State* v. *Matkins,* 45 Mont. 58, 121 Pac. 881, this court reviewed at length the subject now under consideration, stated the reasons which impel courts to look with disfavor upon an application for a new trial based upon newly discovered evidence, and reiterated the rules governing such an application. One of the rules recognized and insisted upon by the authorities everywhere is that the moving party must disclose that he exercised due diligence to procure the newly discovered evidence before the trial. "The particular efforts which were made to discover the testimony before the trial must be stated, giving the

circumstances, and the names of persons of whom inquiry was made. It is not sufficient merely to aver that affiant used 'due diligence' or 'reasonable diligence,' or to employ equivalent expressions, as the court must determine the question of diligence from the facts related in the affidavit of the applicant.'' (14 Ency. Pl. & Pr. 824; *Nicholson* v. *Metcalf,* 31 Mont. 276, 78 Pac. 483.)

Aside from any consideration of the counter-affidavits which were presented, the showing made falls short of the requirements of these rules. It would not be sufficient cause for reversal that the members of this court, if sitting at *nisi prius,* might have viewed the application in a more favorable light. The motion was addressed to the sound, legal discretion of the trial court, and we cannot say from this record that the discretion was abused.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.

