**John FRANICH, by George Franich, His Guardian, Ad Litem, Appellant,**

v.

**GREAT NORTHERN RAILWAY COMPANY, a Corporation, Appellee.**

**No. 15469.**

United States Court of Appeals Ninth Circuit.

Oct. 22, 1958.

As Amended Oct. 28, 29, 1958.

Rehearing Denied Nov. 25, 1958.

Joseph P. Monaghan, Butte, Mont., for appellant.

Weir, Gough & Matson, Edwin S. Booth, Helena, Mont., H. D. Carmichael, Butte, Mont., J. J. Burke, Jr., Helena, Mont., for appellee.

Before STEPHENS, Chief Judge, DENMAN, Senior Circuit Judge, and POPE, Circuit Judge.

DENMAN, Senior Circuit Judge.

Franich, a minor suing by his guardian ad litem, appeals from a judgment of the District Court in a judge-tried diversity suit removed from a district court of Montana, holding the appellee Railway not liable to him for injuries received while playing in the Railway's siding adjacent to its railway tracks near the city of Butte, Montana.

The injury occurred when Franich, then about five years of age, while walking on parallel railroad rails stored in the siding for use in repairs to the Railway's tracks, slipped and fell so that his left foot caught between the rails and his left fibula and tibia were broken.

The pertinent portions of Franich's statement of points on appeal are that the court erred in holding and deciding that the rails upon which plaintiff slipped and fell were piled at a height no greater than similar rails used as a part of defendant's railroad track; and that there was no negligence on the part of the railway company in piling the rails at that place or in the manner of piling them; and in not holding and finding that the rails as piled on defendant's property constituted an attractive nuisance.

There is no merit to the contention that the evidence did not support the finding that the rails were at a height

no greater than similar rails of the railway's tracks. On the contrary, Franich's playmate, with him at the time of the injury, testified by gesture that the rails were about five inches above the ground. Also there is testimony from which the Court could infer that storing rails alongside the tracks was a usual and proper thing to do.

The principal question is whether the Court erred in holding that Franich had not sustained his burden of proof that the rails so stored constituted an "obviously dangerous" nuisance inviting him to play on them within the controlling Montana law.

The Montana Supreme Court in the recent case of Nichols v. Consolidated Dairies, 125 Mont. 460, 463, 464, 239 P. 2d 740, 741, 28 A.L.R.2d 1216, found that a peculiarly operated passenger elevator inside the Dairies' grain elevator, was an "obviously dangerous" and "alluring device" to a twelve-year-old boy. It held the Dairies liable for injury to the boy while mishandling the elevator under its long-established rule of liability where "the injury was caused by an unguarded, *dangerous* machine, or other *dangerous* thing peculiarly attractive to children of the class to which the injured one belongs." (Emphasis supplied.)

A child walking on the rail of one of the railroad's tracks may slip and break his ankle, yet if the railway were liable for such an injury it would have to fence in a greater part of its rights of way, an impossible task where they pass through city streets which the railroad cannot fence off. The situation is like that in Nixon v. Montana, W. & S. W. Ry. Co., 50 Mont. 95, 145 P. 8.

There, the Montana Supreme Court denied liability for an injury to a child while attempting to ride by hanging on the rear of a moving train on her way home from school. It stated the principle controlling in such cases by quoting at page 102 of 50 Mont. at page 10 of 145 P. the following from a Texas decision [San Antonio & A. P. Ry. Co. v. Morgan, 92 Tex. 98, 46 S.W. 28]:

"It has been contended broadly that when an owner places * * * anything upon his property which is attractive to others and one is thereby induced to go thereon, the invitation may be inferred as a fact by the court or jury. Now, since it is manifest that to some classes of persons, *such as infants,* the things ordinarily in existence and use throughout the country, such as rivers, creeks, ponds, *wagons, axes, plows, woodpiles, haystacks, etc.,* are both attractive and dangerous, it is clear that the adoption of such a broad contention would be contrary to reason, lead to vexatious and oppressive litigation, and impose upon the owners such a burden of vigilance and care as to materially impair the value of property and seriously cripple the business interests of the country. *Therefore it has been generally held that the invitation cannot be inferred in such cases."* (Emphasis supplied.)

We think the trial judge who heard the testimony as to how the rails were stored was justified in holding that they neither created an obviously dangerous nuisance peculiarly attractive to children, nor that they constituted an implied invitation to Franich to play on them.

The judgment is affirmed.

STEPHENS, Chief Judge (dissenting).

The appellant, at the time of his injury, was about five years old. He and a playmate of three or four years were playing in an unenclosed and unguarded railroad lot where railroad equipment of various kinds was stored. The lot was not merely an ordinary siding upon which replacement rails were placed, as might be thought from the statement of fact in the majority opinion. It was, in fact, an unenclosed railroad warehouse. Among the material stored in it were two or more rails slightly raised from the ground by cross timbers. The rails

were placed parallel and quite close together, though not touching. While walking along one of these rails, young Franich's left foot slipped from the rail and went between the two rails to the ground causing him to topple over. Two lower leg bones were broken.

The law of the state of Montana applies. The Montana Supreme Court, in Nichols v. Consolidated Dairies of Lake County, 125 Mont. 460, 239 P.2d 740, 742 (1952), held that the requirements for recovery under the attractive nuisance theory are correctly set out in Section 339 of the Restatement of Torts.

It is recited in Section 339 that

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass,"

The evidence was clear and not disputed, and the Court so found that appellee knew that children were habitually playing upon the subject property.

(b) [I quote and comment upon this requirement lastly.]

"(c) the children because of their youth do not discover the condition [of the place] or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it,"

This (c) requirement is present in our case, if in fact the place was dangerous, as the injured child was but five years old.

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

This (d) requirement is present, for the utility could have been maintained and the danger avoided by posting a watchman or by the erection of a fence at comparatively little cost, or the rails could easily and without extra cost have been placed so as to avoid the possibility of the accident in suit.

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children,"

The Court, in our case, found as follows:

"That the rails upon which plaintiff slipped and fell were piled parallel to each other at a height no greater than similar rails used as a part of defendant's railroad track; that storing rails on railroad property alongside of railroad tracks appears to be not unusual and a proper thing to do, and there was no negligence on the part of the railway company in piling said rails at said place or in the manner of piling them in the light of defendant's business as a railroad carrier."

The undisputed facts completely negative such finding. The boy was hurt by falling from the rails. The defendant knew children played upon the lot. The undisputed facts demonstrate that they were attractive to children. At little cost and effort children could have been kept from the lot, or the rails could easily and without extra cost have been placed so that the subject injury could not reasonably have happened.

It is common knowledge that people, not alone children, find it engaging and attractive pastime to try their balancing skill by attempting to walk a rail of a railroad track. But a railroad operating track is a far different thing from two parallel out-of-use rails placed close together and inches from the ground.

Neither the railroad case nor the elevator case cited in the majority opinion is apposite.

We know definitely that the little boy in suit was attracted to the rails as they lay but a few inches apart and a few inches from the ground on wood stringers. We know definitely that the rails

were so placed that when the boy's foot slipped off the rail, as we know it would do sooner or later, it was not free but went between two rails and was so caught that when the boy toppled over, his foot and leg were held rigidly and the bones snapped.

I think all four requirements of the Restatement were shown to be present, and finding to the contrary was in the face of the undisputed evidence and the demonstrated physical facts. See a full discussion of the Four Restatement requirements with citations and authorities in Harper and James, The Law of Torts, 1451 et seq. See also Sioux City and Pacific Railroad Company v. Stout, 17 Wall. 657, 84 U.S. 657, 21 L.Ed. 745. United States v. United States Gypsum Co., 333 U.S. 364, at page 395, 68 S.Ct. 525, 92 L.Ed. 746.

The judgment should be reversed.