GATES, RESPONDENT, *v.* NORTHERN PACIFIC RAILWAY CO. ET AL., APPELLANTS.

(No. 2,508.)

(Submitted March 17, 1908.  Decided March 28, 1908.)

[94 Pac. 751.]

*Railroads—Death—Negligence—"Turntable" Doctrine—Pleadings—Complaint—Trespassers—Burden of Proof.*

Railroads—Negligent Killing of Child—"Turntable" Doctrine—Complaint—Essentials.

1. Employees of a railroad company deposited a worn-out car bottom side up on the sloping side of the track embankment, within the company's yard limits, in such a way as to fall upon and cause the death of a child eleven years old, attracted thereto by its peculiar appearance. In an action against the company for damages plaintiff relied chiefly upon the doctrine of the "Turntable Case." (*Stout* v. *Sioux City & Pac. R. R. Co.*, Fed. Cas. No. 13,504, 2 Dill. 294.) *Held*, that in order to bring the action within the principles of that case, it was necessary for plaintiff to allege and prove, not only that the car was especially attractive to children, but also that the child was too young to

appreciate the danger, and that defendant knew, or in the exercise of ordinary care ought to have known, of its unusually attractive character.

Same—Trespassers—Burden of Proof.

2. The child mentioned in the foregoing paragraph having been, *prima facie,* a trespasser upon defendant railroad company's property, the burden rested upon plaintiff to allege and prove that the trespass was excusable on account of the tender years of deceased, so as to bring the case within the doctrine of the ''Turntable Case.''

*Appeal from District Court, Missoula County; Henry L. Myers, Judge.*

Action by A. M. Gates against the Northern Pacific Railway Company and another. From a judgment for plaintiff, defendants appeal. Reversed and remanded for new trial.

*Messrs. Wallace & Donnelly,* for Appellants.

The ''Turntable'' doctrine applies only where children have been enticed or allured by some dangerous machinery capable of being used and actually used as a plaything. The various courts that recognize and apply the doctrine are careful to note this limitation of it. (*Ratte* v. *Dawson,* 50 Minn. 450, 52 N. W. 965; *Stendal* v. *Boyd,* 73 Minn. 53, 72 Am. St. Rep. 597, 75 N. W. 735, 42 L. R. A. 288; *Moran* v. *Pullman Co.,* 134 Mo. 641, 56 Am. St. Rep. 543, 36 S. W. 659, 33 L. R. A. 755; *Dobbins* v. *Missouri etc. Ry. Co.,* 91 Tex. 60, 66 Am. St. Rep. 856, 41 S. W. 62, 38 L. R. A. 573; *Omaha* v. *Bowman,* 52 Neb. 293, 66 Am. St. Rep. 506, 72 N. W. 316, 40 L. R. A. 531; *Ritz* v. *Wheeling,* 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 148; *Cooper* v. *Overton,* 102 Tenn. 211, 73 Am. St. Rep. 864, 52 S. W. 183, 45 L. R. A. 591; *Arnold* v. *St. Louis,* 152 Mo. 173, 75 Am. St. Rep. 447, 53 S. W. 900, 48 L. R. A. 291; *Heimann* v. *Kinnare,* 190 Ill. 156, 83 Am. St. Rep. 123, 60 N. E. 215, 52 L. R. A. 652.)

To sustain the judgment in this case, this court must affirm, as a principle of law, that the owner of land is bound to make so secure the objects which he places upon it, even though they are only temporarily left there, as that they cannot fall over; and that if he does not and they do fall, he is answerable in damages

to any child, who, trespassing upon his land and sustaining no previous relation whatever to him, happens to be in their way and gets injured by their fall.

The only proof that the car frame was especially alluring and attractive was the statement that "it looked kind of queer to be setting up there." This was insufficient. (See *Ritz* v. *Wheeling*, 45 W. Va. 262, 31 S. E. 993, 43 L. R. A. 152; *Baring* v. *Hannibal etc. Ry. Co.*, 126 Mo. 372, 26 L. R. A. 847, 28 S. W. 1071.) In *Missouri etc. Ry. Co.* v. *Edwards*, 90 Tex. 65, 36 S. W. 430, 32 L. R. A. 825, it was held that injury to a child while playing on a pile of railroad bridge ties insecurely stacked did not render the railway company liable. (See, also, *O'Leary* v. *Brooks Elevator Co.*, 7 N. D. 554, 75 N. W. 919, 41 L. R. A. 677.) In *Foster-Herbert Cut Stone Co.* v. *Pugh,* 115 Tenn. 688, 112 Am. St. Rep. 881, 91 S. W. 199, 4 L. R. A., n. s., 804, the supreme court of Tennessee held that a wagon constructed for hauling stone with a low bed below the axles is not so attractive and dangerous to children that the owner must take special precautions to avoid injury to such as attempt to ride upon it. The court there said that the rule of the "Turntable Cases" should not be carried beyond the class of cases to which it has been applied. (See *Sullivan* v. *Huidekoper,* 27 D. C. App. 154, 5 L. R. A., n. s., 263.) The car frame which fell upon deceased was not a plaything. It is not suggested or claimed that deceased was playing upon or about it.

But even if this court should hold that the owner of property is answerable for the damages sustained by a' child, attracted to his premises, while playing upon them, no matter how common may be the object which attracted him, still the most elementary principles require as a condition of his liability that the owner should have known, or should have had reason to believe that it would attract children, and that children would be likely to be injured by it before he can be held accountable for its safety. The *scienter* is of the first importance. (*Stout* v. *Sioux City & Pac. R. R. Co.,* Fed. Cas. No. 13,504, 2 Dill. 294; *Driscoll* v. *Clark,* 32 Mont. 172, 80 Pac. 1, 373. See, also, *Tucker*

v. *Draper,* 62 Neb. 66, 86 N. W. 917, 54 L. R. A. 322.)   Even where a contractual relation exists between the person injured and the person sought to be held accountable for the injury, as in the case of master and servant, this element of knowledge is important.   (Labatt on Master and Servant, sec. 119.)   In *FitzMaurice* v. *Connecticut Co.,* 78 Conn. 406, 112 Am. St. Rep. 159, 62 Atl. 620, 3 L. R. A., n. s., 149, it was held by a court which gives full effect to the doctrine of the "Turntable Cases," that one who maintains an ash dump on his own property, remote from a thoroughfare, is not liable for injuries to a child of tender years who starts from adjoining property through a broken fence and is burned in the hot ashes, "where he has no reason to anticipate the presence of a child there."

*Messrs. Hall & Patterson,* for Respondent.

The rule of the "Turntable" doctrine does not go to the extent of applying only to dangerous machinery.   (*Driscoll* v. *Clark,* 32 Mont. 172, 80 Pac. 1, 378; *Beinhorn* v. *Griswold,* 27 Mont. 79, 94 Am. St. Rep. 818, 69 Pac. 557, 59 L. R. A. 771; *Edington* v. *Burlington C. R. & N. Ry. Co.,* 116 Iowa, 410, 90 N. W. 95, 57 L. R. A. 561; *Kopplekorn* v. *Colorado Cement-Pipe Co.,* 16 Colo. App. 274, 64 Pac. 1047, 54 L. R. A. 284; *Schmidt* v. *Cook,* 23 N. Y. Supp. 799, 4 Misc. Rep. 85.)

The contention that the complaint fails to allege that the defendants knew that children were in the habit of frequenting the locality where the car frame was left or that children would be likely to be attracted by it, or that any child had ever been seen upon the right of way at that point, or that they were likely to be injured if they came there, or that the defendants had any reason to believe any of these things, is covered by the amended complaint, which alleges "that while said Amos M. Gates was traveling along near the bottom of said grade or embankment near said car, where he had been attracted by the especially and unusually attractive appearance of said car in its condition off said track upon said grade or embankment, its unusual condition, position and situation causing said car to be

especially and unusually attractive to children of tender years and to said Amos M. Gates," etc., "all of which was well known to said defendants, or by the exercise of reasonable diligence might have been known."

We believe that setting up the facts, which of themselves show that children must frequent that locality, is as good pleading as to make the general allegations. All these conditions were obvious to defendants, and are an allegation of knowledge that children would be attracted if there was anything to attract them. It is presumed that persons will observe ordinary apparent conditions, and that they presume the ordinary consequence of their acts. These conditions were apparent, and the allegations and proof that the defendants themselves carelessly, negligently, wantonly, willfully and recklessly left the car in the condition, position, location and situation (it not being a case in which it became in a defective condition or situation after being left there), are of themselves allegations of knowledge of its attractiveness and of the knowledge that under the conditions set forth they would attract children. (See *Coulter* v. *Union Laundry Co.*, 34 Mont. 590, 87 Pac. 973.)

MR. JUSTICE SMITH delivered the opinion of the court.

The following statement of the facts in this case is adopted from the brief of the appellant, supplemented by certain suggestions made by the respondent: This action was brought by plaintiff in Missoula county to recover damages for the death of his eleven year old son, Amos Gates, who was killed on the afternoon of June 14, 1906. On June 13, 1906, the defendant Heaney was in the employ of the defendant railway company at Missoula as foreman of a crew of men employed in the yards. Sometime during the forenoon of that day the men under his charge took the body or wooden part of a worn-out coal car to a point on the main line of the railway several hundred feet east of the passenger station, but within the yard limits, and left it at the side of the track, intending later to burn it. The iron braces and rods were still on the car, but not the wheels. It looked topheavy

—as though it would easily tip over. The railroad track at the point where the car was left rests upon a fill or embankment, the top of which is twenty feet above the level of the ground on either side; the sides of the fill sloping outwardly from the track to the level ground below. When the car was first deposited on the bank, it rolled down further than the employees expected that it would, and they hauled it back to the point where it was finally left, so that, when it burned, no damage would be done to other property. The car was left bottom side up on the north slope of, and about halfway down, the fill. Between 2 and 3 o'clock in the afternoon of the next day the deceased, in company with his twin brother, Elihu, and a still younger brother, was standing on the defendant's right of way, near the bottom of the fill, looking at the car. The children started from the house of one Graham to go to a certain frog pond to swim, when they saw the car and went down to see it. Elihu testified: "We seen this car up there on the bank, and it called our attention, and we hurried over there." It appears that, in addition to the swimming pond, there was a certain lumber-yard somewhere in the vicinity of the defendant company's ground to which a path led across the right of way. When the boys first observed the car, they were in the path; but turned out of it, and went to the foot of the fill to look at the car. There was another path or trail directly under the car, but this was not the one the boys were traversing when their attention was first attracted to the car. These paths had been in existence for several years, and had been used by persons crossing the track. Between the time when the car was left on the embankment and the time of the accident thirty-two trains of the defendant company passed the spot. The last of these trains by its vibration caused the car to roll down the bank upon the child Amos, causing his death. Elihu caught his younger brother and drew him out of danger. Elihu testified that the car "looked kind of queer to be perched up on the side of the grade with the bottom up." Missoula is a city of about 8,000 people. The accident occurred within the city limits, at

a point where the right of way was open and not fenced off from the streets. Prior to the boy's injury two men had gone on the right of way to look at the car. One testified: "I was curious about it, whether the car had been dumped off the track, or whether it had been thrown off. I walked over and took a look at the car. It was out of curiosity, because it was an unusual thing for them to dump a car around there. I believe they had burned one before that. It was not the unusual appearance of the car that caused me to go over to look at it. It was an unusual thing for a car to be dumped there." The other said: "Going down that way at noon, I noticed this car lying in a position. It was standing up and down the bank, and, of course, I wondered how much of a push it would take to push it down. Didn't pay any further attention, noticed the position it was lying in on the side of the bank." In addition to the foregoing, one Storer testified: "Walked past the car on the day before the accident. It was set up on edge, on the side of the embankment on the north side of the railroad track; set down on the edge of the grade. I thought it would be easily pushed over or pushed down; wondered it did not fall, and thought I would not like to walk down under it, anything of that kind; thought it might fall on a man pretty easy. I did not pay much attention to it any more than I just stopped and looked at it."

At the close of plaintiff's case defendants moved for a nonsuit upon the following grounds:

"(1) That it appears from the evidence, and it is admitted by the plaintiff in his reply, that at the time when the deceased was killed he was upon the premises of the defendant railway company.

"(2) That there is nothing to show, nor is it alleged, that the defendant knew that the deceased was exposed to any peril, or that they knew of his presence upon the premises of the railway company; and, under the decision in the case of *Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373, there could be no recovery even if the defendants had known of his peril, or known of his presence

upon the premises of the railway company, or possessing such information had neglected to inform him.

" (3) That while it is alleged in the complaint that the car or the body of the car that was thrown upon and caused the death of deceased was especially alluring and attractive to children, there is no evidence in this case that it was especially or at all attractive or alluring to children, or that the vicinity of said car was frequented by children; nor is there any evidence that the defendants or either of them knew or had reason to suppose that children were or would be attracted by the presence of said car upon the right of way of defendant railway company.

" (4) That it has not been made to appear that the deceased was incapable of appreciating whatever danger there was from the presence of the car upon the embankment.

" (5) The evidence directly shows that the deceased did not go in the vicinity of the car because allured or attracted thereto, but he and his brothers went there for the purpose of procuring wood.

" (6) There is no pleading in this case sufficient to sustain a recovery on the theory that the deceased was rightfully on defendant railway company's land by either invitation or license.

" (7) There is no evidence sufficient to warrant a recovery on the last-named theory."

This motion was overruled. The jury returned a verdict for the plaintiff, and the court entered judgment on the verdict. From that judgment, and also from an order denying a new trial, defendants appeal.

At the outset we may eliminate from consideration the matters contained in paragraph 5 of the motion for a nonsuit, because, in our judgment, the evidence fails to show that the boy who was killed went upon the right of way at this particular time for the purpose of procuring wood.

The following is the respondent's contention in his printed brief: "The plaintiff is entitled to recover under either of the following theories: (1) Though Amos M. Gates, deceased, was a trespasser, the plaintiff is entitled to recover upon the ground

that defendants willfully, recklessly and wantonly left said car in its condition, position, location and situation that the child's death was caused by the willful, wanton, or reckless acts of defendants.   (2) That the car in its condition, position, location and situation was so especially and unusually calculated to allure and attract children and Amos M. Gates, deceased, that he came to the place of injury by the invitation of defendants.''

The appellants contend that the court erred in denying the motion for a nonsuit, and in overruling their motion for a new trial.   No claim is made that the parents of the child were negligent, and no fault is found with the instructions given to the jury.   The appellants present the case thus: ''By the record in this case there is presented the question how far the doctrine of the so-called 'Turntable Cases' is to be extended and applied in this court.''   The respondent, in the quotation from his brief heretofore made, seems to base his right to recover upon two different propositions or theories.   He cites no cases in support of what may be termed his first contention, except *Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373, where this court held that the complaint should have alleged either that there was an actual invitation to children to play about the machinery, or that it was so especially and unusually attractive to them that it constituted an implied invitation; and the case of *Egan* v. *Montana Central Ry. Co.*, 24 Mont. 569, 63 Pac. 831, where it was decided that the defendants owed to the plaintiff, as they did to any other trespasser, the duty to refrain from any willful or wanton act occasioning injury.   His second contention seems to be that he is entitled to recover by application of the doctrine of the so-called ''Turntable Cases'' as laid down by the supreme court of the United States in *Railroad Co.* v. *Stout*, 17 Wall. 657, 21 L. Ed. 745.   In support of the latter position he has cited numerous cases, and we have examined many others not found in the briefs.   No good reason can be seen for an extended discussion of the particular cases.   A very comprehensive and able review of them is found in the case of *Wheeling etc. R. R. Co.* v.

*Harvey,* 77 Ohio St. 235, 83 N. E. 66, decided December 3d last by the supreme court of Ohio.

Mr. Thompson, in the first volume of his Commentaries on the Law of Negligence, edition of 1901, section 1030, says: "We now come to a class of decisions which hold the land owner liable in damages in the case of children injured by dangerous things suffered to exist unguarded on his premises where they are accustomed to come with or without license. These decisions proceed on one or the other of two grounds: (1) That where the owner or occupier of grounds *brings* or *artificially creates* something thereon from which its nature is especially *attractive to children,* and which at the same time is dangerous to them, he is bound, in the exercise of social duty and the ordinary offices of humanity, to take reasonable pains to see that such dangerous things are so guarded that children will not be injured by coming in contact with them. (2) That although the dangerous thing may not be what is termed an *attractive nuisance*—that is to say, may not have an especial attraction for children by reason of their childish instincts—yet where it is so *left exposed* that they are likely to come in contact with it, and where their coming in contact with it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to take reasonable pains to guard it so as to prevent injury to them."

At the trial of the "Turntable Case" (*Stout* v. *Sioux City & Pac. R. R. Co.,* 2 Dill. 294, Fed. Cas. No. 13,504), Judge Dillon charged the jury as follows: "In the first place, it is alleged in the petition, and it must apear by the evidence, that this turntable, in the condition, situation and place where it then was, was a dangerous machine, one which, if left unguarded or unlocked, would be likely to cause injury to children. You have heard described the manner in which this turntable was constructed and left, and very much evidence has been adduced to show that turntables are constructed and left in this manner elsewhere; and the evidence is quite undisputed that it is not the practice

of railroads to guard or lock them.   The circumstance that other roads throughout the country do not guard or fasten turntables (if you find such to be the fact) is not conclusive in the defendant's favor that there was or could be no negligence on its part as respects the turntable in question; but, while not conclusive, it is still a very important fact or circumstance to be considered by the jury in determining the question of the defendant's negligence.

"This action rests, and rests alone, upon the alleged negligence of the defendant, and this negligence consists, as alleged, in not keeping the turntable guarded or locked.   Negligence is the omission to do something which a reasonable, prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent or reasonable man would not do, under all the circumstances surrounding the particular transaction under judicial investigation.

"If the turntable, in the manner it was constructed and left, was not dangerous in its nature, then, of course, the defendants would not be guilty of any negligence in not locking or guarding it.   But, even if it was dangerous in its nature in some situations, you are further to consider whether, situated as it was on the defendant's property, in a small town, and distant or somewhat remote from habitations, the defendants are guilty of negligence in not anticipating or foreseeing, if left unlocked or unguarded, that injuries to the children of the place would be likely to or would probably ensue.

"The machine in question is part of the defendant's road, and was lawfully constructed where it was.   If the railroad company did not know, and had no good reason to suppose, that children would resort to the turntable to play, or did not know, or had no good reason to suppose, that, if they resorted there, they would be likely to get injured thereby, then you cannot find a verdict against them.

"But if the defendant did know, or had good reason to believe, under the circumstances of the case, the children of the place would resort to the turntable to play, and that, if they did, they

would or might be injured, then, if they took no means to keep the children away, and no means to prevent accidents, they would be guilty of negligence, and would be answerable for damages caused to children by such negligence. Counsel for the defendant disclaim resting their defense on the ground that the plaintiff's parents were negligent, or that the plaintiff (considering his tender age) was negligent, but rest their defense upon the ground that the company was not negligent, and claim that the injury to the plaintiff was accidental, or brought upon himself. The defendants are not insurers of the limbs of those, whether adults or ·children, who may resort to their ground; and there are many injuries continually happening which involve no pecuniary liability to anyone.

"To find against the defendant you must find that it has been guilty of neglect, of a wrong, of a want of due and proper care in the construction of machinery of a dangerous character, and, so leaving it exposed, as before explained, that, as reasonable men, the officers of the road ought to have foreseen that an accident, happening as this happened, would probably occur, or be likely to happen."

The supreme court of the United States said: "The charge was in all respects sound and judicious." Many courts have followed the *Stout Case,* and others have refused to do so. The doctrine there laid down has in some instances been strictly limited to cases of attractive and dangerous machinery, and in others it has been extended, until its ramifications are almost limitless. I can see no reason why, if the doctrine of the "Turntable Cases" is adopted at all, it should not be extended to those cases, not involving turntables, which come within the principles upon which the *Stout Case* rests.

Some of the decided cases seem to fall within Mr. Thompson's first class and some within the second, while others appear to belong partly to one and partly to the other. It may be said, under the rule laid down in *Driscoll* v. *Clark, supra,* the plaintiff here did not make out a cause of action, because, while he alleged that the car was especially attractive to children, his

only proof was that children were attracted to it at the time of the accident. If we follow the rule in *Driscoll* v. *Clark* to its logical end, the fact that these children were attracted is insufficient to prove that the car was peculiarly and unusually attractive to children, especially in view of the fact, as proven, that adults were also attracted to look at it. The writer of this, however, is of opinion that, in the light of all the circumstances shown at the trial, there was sufficient testimony to go to the jury on this point.

A peculiar situation appears from the record. Plaintiff relied upon the fact that the deceased was a child of such tender years that he was attracted to the car by its "queer" appearance, and was therefore not technically a trespasser, and that he was unable to appreciate and understand the danger attendant upon the conditions surrounding him; yet the fact that he was so immature as to bring him within the rule of the *Stout Case* was neither alleged nor proved, and the court gave the jury an instruction on contributory negligence. The plaintiff testified that Amos, who was eleven years of age, was an active, robust boy, able to earn money. In the case of *Buch* v. *Amory Mfg. Co.*, 69 N. H. 257, 76 Am. St. Rep. 163, 44 Atl. 809, the court said: "The plaintiff was an infant of eight years. The particular circumstances of the accident—how or in what manner it happened that the plaintiff caught his hand in the gearing— are not disclosed by the case. It does not appear that any evidence was offered tending to show that he was incapable of knowing the danger from putting his hand in contact with the gearing, or of exercising a measure of care sufficient to avoid the danger. Such an incapacity cannot be presumed. * * * An infant is bound to use the reason he possesses, and to exercise the degree of care and caution of which he is capable. If the plaintiff could by the due exercise of his intellectual and physical powers have avoided the injury, he is no more entitled to recover than an adult would be under the same circumstances."

In view of the fact that the deceased was *prima facie* a tres-
passer, the burden rested upon the plaintiff to allege and prove
facts that would remove that objection to a recovery, and bring
the case within the principles laid down in the *Stout Case.*
I do not mean to say—because the question is not before us—
that a child so young that his trespass in pursuit of an espe-
cially attractive object might be excused, could not be guilty
of contributory negligence. What I do say is that, where
the trespasser is excusable on account of the tender years of
the child, that fact should be alleged and some proof offered
in support of it, unless the child is so very young that there
can be no question of his lack of capacity.

The case also falls short of the *Stout Case* in this: There is
no allegation in the complaint and no proof that the defend-
ants knew the attractive character of the car. Neither is there
any allegation that the defendants should have had such knowl-
edge or have apprehended and foreseen that the car would be
especially and unusually attractive to children. I am of opin-
ion that the jury might properly have found the latter fact
from the circumstances proven, if the complaint contained the
proper allegation.

For the reasons stated, the cause should be reversed, but, as
there must be a new trial, it becomes necessary to decide whether
the plaintiff may recover in any, event. Mr. Chief Justice
Brantly does not believe in the doctrine of the "Turntable
Cases," while Mr. Justice Holloway and the writer assent to
it. It appears that in many of the decided cases the courts
have been led by their sympathies to unreasonably extend the
application of the doctrine to the point of overturning prin-
ciples firmly established in the law, and imposing burdens
upon the property owner incompatible with the fundamental
idea of ownership. It is my judgment that when the owner
or occupier of grounds brings or artificially creates something
thereon especially attractive to children, as shown by the na-
ture of the thing itself and the fact that a child was, or chil-
dren were, attracted to it, and leaves it so exposed that they

are likely to come in contact with it, either as a plaything or an object of curiosity, and where their coming in contact with it or playing about it is obviously dangerous to them, the person so exposing the dangerous thing should reasonably anticipate the injury that is likely to happen to them from its being so exposed, and is bound to use ordinary care to guard it so as to prevent injury to them.

I am of opinion that the judgment and order appealed from should be reversed and the cause remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY: I concur in the reversal of the judgment and order, but do so upon the ground that upon the facts appearing in the record the deceased was a trespasser upon the property of the defendant railway company, and that the defendant owed him no duty while he was there other than to refrain from injuring him through its wanton or grossly negligent conduct, after knowledge of his presence. In my opinion the case falls within the principle of the case of *Driscoll* v. *Clark*, 32 Mont. 172, 80 Pac. 1, 373.

MR. JUSTICE HOLLOWAY: I agree with the conclusion reached by Mr. Justice Smith and with the doctrine of the ''Turntable Cases,'' when expressed as I think it should be. In many instances I think this doctrine has been carried to such an extent that the principle involved has been completely overlooked. It is a general rule that the owner of private lands does not owe any positive duty to trespassers. His duty in such a case is of a negative character—that he will not willfully or wantonly cause injury. But to the general rule above the doctrine of the ''Turntable Cases'' furnishes an exception; for, although the injured child was technically a trespasser, the trespass is excused by what is deemed the land owner's implied invitation extended under the particular circumstances. At present I am not prepared to go further than to say that I think such

land owner should be held liable to the injured child only in a case presenting all of the following facts:

(1) That the injured child was too young and inexperienced to appreciate the danger, and was therefore incapable of contributory negligence.

(2) That the injury was caused by an unguarded, dangerous machine, or other dangerous thing peculiarly attractive to children of the class to which the injured one belongs.

(3) That the land owner impliedly invited children of that class to come upon his premises. This invitation may be implied from the fact that the land owner knew, or, in the exercise of ordinary care, ought to have known, that such children were in the habit of coming on his premises to play or to gratify their childish curiosity.