Blanche Plotkin, Minor, by Philip Plotkin, Her Next Friend, Appellant, v. Joseph Winkler and Jack Winkler, Individually and Trading as Joseph Winkler and Company, and Continental Illinois National Bank and Trust Company of Chicago, Appellees.

Gen. No. 42,567.

filed May 23, 1944.

ARVID E. ANDERSON, of Chicago, for appellant; ARTHUR A. WOLFINSOHN, of Chicago, of counsel.

Ross, Berchem & Schwantes, of Chicago, for appellees.

Mr. Presiding Justice Friend delivered the opinion of the court.

Plaintiff, a minor, was injured as the result of a fall through an inadequately protected air shaft extending downward four stories from the flat gravel roof of a large apartment building where she resided with her parents. She brought suit by her next friend to recover damages against the Continental Illinois National Bank and Trust Company and Joseph and Jack Winkler, individually and doing business as Joseph Winkler & Company, who had leased the building from the bank and were operating the property when the accident occurred. At the close of plaintiff's case the court directed a verdict in favor of the bank and at the close of all the evidence a verdict was directed in favor of the Winklers. Plaintiff appeals from the judgments entered on the verdicts and the court's denial of her motion for a new trial.

It appears that in 1938 plaintiff's parents became tenants on the first floor of a large "L" shaped apartment building, consisting of more than 60 units, located at Elm and Clark streets, Chicago, which was four stories high on the Clark street side and three and one-half stories high along Elm street. From the third floor porches, the roof of the Elm street section was easily accessible by climbing over a low railing about three feet high. A ladder which had been stationed on the Elm street roof for more than a year before the accident, led to the Clark street roof, a climb of some eight feet.

The accident occurred June 9, 1940. Plaintiff was then about nine years of age. For more than a year before the accident she had gone up on the Clark street roof with other children, as frequently as two or three times a week, where they played games such as tag, hide-and-go-seek, and stoop tag. At times there were

as many as four or five children on the roof at one time. In addition to playing games, plaintiff and her companions hollered through the air shaft to hear a resulting echo. The air shaft was covered by rotted unnailed boards laid across 2 x 4's, which, according to the photographs introduced in evidence, were widely spaced and inadequate protection against danger.

On the day of the accident plaintiff was playing near the air shaft on the roof with two of her friends, Virginia Kuhns and Charlotte Bennett. She had one hand on Charlotte's shoulder and the other on the boards covering the air shaft, when she fell through the boards to the ground floor, sustaining fractures of both legs and other injuries. There is evidence that the children in the building and neighborhood never played in the courtyard of the building because cars were always parked there, but played either on the roof of the building or on the sidewalk. Raymond Bruce, a tenant on the premises, testified that he had been on the roof 10 or 12 times and had always seen children playing there. His son George, aged 13, testified that he had been on the roof about 50 times and, together with other boys and girls, played games up there. Several other witnesses stated that they saw and heard children playing on the roof. The air shaft was visible from the windows of the apartments that opened into it and from the porches of the two buildings.

The Winklers had leased the building from the bank in 1937, some three years prior to the accident, and Jack Winkler testified that he never saw any children on the roof or knew that the children had been playing there. Jack Keller, the janitor in charge of the building, offered testimony to the same effect, but it appears he had previously made a statement to an investigator asserting that he had been on the roof, had seen children playing there and that he had not said anything to them. Upon trial plaintiff sought to introduce this written statement in evidence for the purpose of im-

peaching Keller and to show that as Winklers' agent he had actual notice of the fact that children had been in the habit of playing on the Clark street roof. The court excluded the statement on the ground that Keller could not read or write, that the statement was not in his handwriting, and therefore inadmissible. It appears from the record that upon cross-examination Keller identified the statement and admitted that he had signed it and that it had been read to him, but he insisted that he had told the investigator the facts to which he testified and not those contained in the statement. Defendants argue that in order to make the statement admissible, plaintiff should have called the investigator, who supposedly heard Keller when the statement was prepared. No authority is cited for this contention. Moreover, the record indicates that plaintiff was not given an opportunity to call the investigator as a witness. The court refused to admit the statement in evidence and immediately thereafter proceeded to instruct the jury to return a verdict in favor of defendants. In *Edmunds Mfg. Co. v. McFarland,* 118 Ill. App. 256, a written statement containing admissions material to the cause, admitted by plaintiff to have been signed by him, was offered by way of impeachment and refused. This was held to be reversible error. The court held that the admittedly genuine signature appearing at the bottom of the statement was sufficient to make it competent, citing *Webster Mfg. Co. v. Schmidt,* 77 Ill. App. 49, *Hanlon v. Ehrich,* 80 App. Div. 359, 80 N. Y. Supp. 692, and *Illinois Cent. R. Co. v. Wade,* 206 Ill. 523, and said: "The competency of the evidence is too well settled to admit of doubt, or citation of authorities in support of it. It would seem that the court must have confused, as counsel do, the question of its competency, with its probative force and value, two very distinct questions. The question of its competency was for the court, and its value as evidence was for the jury to decide. How-

ever that may be, it is familiar law that the statement should have been received in evidence, and its exclusion was reversible error." In *Chicago City R. Co. v. Mauger,* 128 Ill. App. 512, the court followed the same rule with respect to the admissibility of an impeaching statement, " 'not as substantive proof of the truth of such statements, but as tending to discredit the witnesses.' " (*Illinois Cent. R. Co. v. Wade,* 206 Ill. 523.) Inasmuch as the cause will probably have to be retried for the reasons hereinafter indicated, we consider it necessary to make an advisory ruling as to the competency of the statement upon retrial.

The paramount questions presented are whether the court was warranted in holding, as a matter of law, that the facts adduced upon hearing did not properly fall within the doctrine of attractive nuisance, and whether there was sufficient evidence to require the questions of negligence and of attractive nuisance to be submitted to the jury. In directing a verdict for defendants, the court expressed the view that an attractive nuisance "must be something that could be seen from the street, from the public highway or from the sidewalks, so that the children, seeing it—their attention is arrested by it and the curiosity which is natural in all small children is aroused and they go on the property of persons and investigate it and play with it and as a result they are hurt," and also stated as his opinion that the children had no right to play on the roof and were therefore, in a sense, trespassers, and that there was nothing of record to indicate that defendants failed to comply with all existing laws for the safety and maintenance of the premises. It is obvious from the proof adduced that not only adults but small children could, with apparent ease, step from a railing onto the roof. There were no barricades, warning signs or notices to keep off the roof. The ladder standing there served as an invitation or, as plaintiff's counsel say, a "challenge" to the children to use the

premises, and there was considerable evidence that plaintiff and her playmates frequented the roof for the sole purpose of playing thereon. Under the greater weight of authority in this state, it is primarily a question for the jury to determine whether or not such premises are attractive to children. In *Flis v. City of Chicago,* 247 Ill. App. 128, we held that "Unless the facts . . . are such that all reasonable minds would draw therefrom no other inference than that the tar kettle and the manner in which it was used did not constitute an attractive nuisance, the question became one of fact for the jury to determine," citing numerous cases. We adhered to that rule in the recent case of *Collins v. City of Chicago,* 321 Ill. App. 73. Nor is it always necessary, in order to create an attractive nuisance, that it should be visible from the street. *Cicero State Bank v. Dolese & Shepard Co.,* 298 Ill. App. 290, citing *Ramsay v. Tuthill Building Material Co.,* 295 Ill. 395.

Defendants cite several cases in support of the contention that the court was warranted in determining the question whether an attractive nuisance and negligence existed, without submitting those questions to the jury. One of the decisions relied upon is *Burns v. City of Chicago,* 338 Ill. 89, where a boy, for the purpose of winning a wager, climbed an electric light pole and was killed by an electric shock. The court in that case held that the evidence concerning the electric light pole did not tend to prove that it was attractive to children, and that the pole was not the proximate cause of the injury because the climbing thereof was induced by a wager made between plaintiff and other boys. In *Rodgers v. Beach,* 288 Ill. App. 462, also cited by defendants, a ten-year-old boy was overcome by fumes when he climbed into a partially filled tank car through a manhole which had been left unsecured. In that case the complaint was dismissed on motion. No evidence of any kind was presented. Among the grounds for

dismissal it was urged that the complaint did not set forth any description or facts showing that the tank car was attractive to children or likely to allure them; that there was no allegation showing defendant knew, or by the exercise of care should have known, of the dangerous condition in and about the tank car; and that there was no allegation that defendant had anything to do with the creation or maintenance of the alleged dangerous condition or caused the same or had knowledge of it. In the case at bar, all these elements were pleaded and denied by defendants, and there was conflicting evidence upon the trial with respect to the various allegations made.

Instrumentalities held to be attractive nuisances are cited and discussed in the following cases, in some of which it was held that the question was primarily one for the determination of the jury: *Wolczek v. Public Service Co. of Northern Illinois*, 342 Ill. 482; *O'Donnell v. City of Chicago*, 289 Ill. App. 41; *Deming v. City of Chicago*, 321 Ill. 341; and *Howard v. City of Rockford*, 270 Ill. App. 155. Under all the circumstances we are of opinion that the facts in this case, both with respect to whether the roof and its accessibility as affording a playground for children constituted an attractive nuisance, and whether defendants were negligent in failing to properly safeguard the premises, were questions that should have been submitted to the jury.

As to whether the Winklers knew that children used the roof for a playground, the evidence is of course conflicting. Aside from the admissibility of Keller's statement, the jury should have been permitted to pass upon the question whether defendants knew or should have known that children were using the roof as a place upon which to play as a common practice. There was evidence tending to show that from year to year more children had played thereon. In *Oglesby v. Metropolitan West Side El. R. Co.*, 219 Ill. App. 321, it appeared that children's games were played in a

certain building; that one of the neighborhood boys had played there at least 40 or 50 times; and that there was no evidence that the owner had tried to prevent the use of the building for that purpose. As in the case at bar, the court directed a verdict for defendant, which was reversed and remanded on appeal. In passing upon the question the court said: "That a child is first attracted upon the premises by another instrumentality than the one inflicting the injury is not decisive of liability. . . . We do not think the fact that the entire interior of the building and the entrance at the north end might not be seen from the street is of controlling importance in view of the evidence tending to show that the premises had been used as a place for playing for a long time, *from which the jury might conclude the owner had knowledge of this fact, or should have known it."* (Emphasis ours.) In that case the injured child did not reside in the building, whereas in the case at bar plaintiff's parents occupied one of the units. There was no playground or other facilities for children residing in the building, and therefore she was not a trespasser as was the plaintiff in the *Oglesby* case.

With respect to the bank it appears that it was sued in its individual capacity. The evidence conclusively shows that the bank did not own the premises, nor did it operate, manage or maintain it; as trustee it merely leased the building to the Winklers. In the absence of an agreement to the contrary, the lessee or occupant, and not the owner of a building, is responsible for injuries received in consequence of a failure to keep the occupied premises in repair, whether the condition complained of is the result of misfeasance, malfeasance or nonfeasance. It was so held in *Marcovitz v. Hergenrether,* 302 Ill. 162, wherein numerous cases are cited to support the doctrine. Accordingly we think the court properly instructed the jury to return a verdict in favor of the bank.

As to the Winklers, the judgment entered on the directed verdict is reversed, and the cause is remanded for a new trial.

*Affirmed in part, reversed in part and cause remanded for a new trial.*

SCANLAN and SULLIVAN, JJ., concur.