**Gertrude J. CALLAHAN, Guardian of Joe Steven Palm, a Minor, Plaintiff,**

**v.**

**Theodore Vern BUTTREY, Sr., Trustee for Theodore Vern Buttrey, Jr. and Jerrold Scoutt Buttrey; Theodore Vern Buttrey, Jr., and Jerrold Scoutt Buttrey, Defendants.**

**Civ. No. 2032.**

United States District Court
D. Montana,
Havre-Glasgow Division.

Aug. 28, 1960.

John M. Kline, Glasgow, Mont., for plaintiff.

Hall, Alexander & Kuenning, Great Falls, Mont., for defendants.

JAMESON, District Judge.

This is an action for personal injuries sustained by Joe Stephen Palm, a minor, on April 14, 1956, when he fell from the roof of a building in Glasgow, Montana, owned by the defendants. The case was tried to a jury. At the close of the evidence the defendants moved for a directed verdict, which was denied. The jury failed to return a verdict and was discharged. Defendants have moved the court for judgment in accordance with their motion for directed verdict.[1] In determining this motion the evidence must be viewed in the light most favorable to plaintiff.

Joe was seven years old at the time of the accident and lived with his mother and older brother in an apartment on the second floor of defendants' building. The front part of the building has two stories and the rear part one story. The ground floor was occupied by a clothing store, and the second floor has ten apartments. Access to the second floor apartments is by a stairway from the front of the building. A door from the second floor hallway opens onto the roof of the one story rear of the building. This roof has two levels connected by a stairway, with the higher level toward the front of the building and the lower toward the rear. On the lower level defendants maintain clothes lines, garbage cans, and a small building containing laundry equipment, for the common use of the tenants. The rear of the building roof is approximately seven feet above the alley. Approximately four feet from the rear edge of the roof defendants constructed a railing consisting of two horizontal 2 x 4's supported by upright 4 x 4 posts. At the time of Joe's accident the top rail of this railing was approximately 31 inches above the roof and the top of the bottom rail was approximately 16 inches above the roof. Garbage cans were placed on this four-foot wide strip between the railing and the rear edge of the roof, to make them accessible to the garbage collector. There was no gate in the railing, and tenants gained access to the garbage cans by reaching or leaning over the railing.

Joe, his mother and Paul, an older brother, moved into the apartment in March, 1956. Rosalee, a grown sister, was also a tenant in the building, sharing another second floor apartment with a girl friend. Prior to renting the apartment, Joe's mother had inspected the premises and was fully aware of the condition of the roof area. Joe was for-

1. Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

bidden to go onto the roof unless accompanied by his brother, mother or some other older person.

On the afternoon of April 14, 1956, Joe was on the roof with his sister Rosalee. They left the roof together, going to their respective apartments. Shortly thereafter Joe returned alone and was seen near the rail by a woman tenant. She was in the washroom when Joe fell from the roof. Apparently there was no one else on the roof, and the only witness to the accident, aside from Joe himself, was Jackie Hebdon, a five year old neighbor.

The recollection of both children is understandably vague and uncertain after the lapse of four years.[2] They agree that Joe had a water pistol in his hand, and the water pistol was found near Joe in the alley after the accident. According to Jackie, Joe was on the lower level of the roof of defendants' building and Jackie was in her yard directly across the alley. They were playing "cowboys and Indians". Joe was using a "squirt gun" and Jackie was using her "finger or a stick". Joe was trying to hit Jackie with the squirt gun. She saw Joe fall from the roof but could not "exactly remember it all". She thought he got on the fence and fell off.[3]

Joe testified that he remembered "leaning over the rail squirting my squirt gun at some boys on a motor bike going down the alley". He recalled seeing Jackie and trying to shoot her with his squirt gun, and testified that he "leaned over the railing", but "did not climb up on the railing". He could not recall anything after leaning over the rail until he woke up in the hospital in Great Falls. He testified that he was leaning on the top 2 x 4, with his gun in his hand.[4]

Joe was found lying in the alley below a point just beyond the garbage cans. A few days after the accident, Joe's sister found a sizeable patch of dark brown substance, which appeared to be dried blood, on the edge of the roof and the side of the building above the spot where Joe was found in the alley. A jury might reasonably infer, as plaintiff's counsel contends, that this was Joe's blood. If so, Joe must have struck his head with considerable force on the edge of the roof.[5] His injury was diagnosed as a comminuted, depressed fracture of the skull.

There is no evidence that the rail broke or gave way or that it was defective in any manner. Taking into consideration the height of the railing and Joe's height, there are only two possible explanations of his fall into the alley: (1) That he climbed over or through the railing; or (2) that he climbed on top of either the railing or garbage cans and then fell to the ledge of the roof and to the alley below. If we assume that the spot observed by his sister was Joe's blood, then the second explanation is the more reasonable.

2. Both children were interrogated by the court in the absence of the jury and presence of counsel. They were determined by the court to be competent to testify, and counsel for both parties acquiesced in this determination.

3. Jackie testified as follows:
"Q. Can you tell these people how Joey happened to fall off the roof? A. I can't exactly remember it all.
"Q. Did he get up on the railing? A. I can't remember. It has been such a long time.
"Q. You don't know how he fell off the roof? A. No.
"Q. Was he able to squirt you with this squirt gun? A. He always missed me.

"Q. He always missed you? A. Yes.
"Q. Well, he fell off the roof down into the alley? A. Yes.
"Q. And did he get on the garbage cans? A. I can't remember.
"Q. Or did he get on the fence? A. I think he got on the fence.
"Q. And what happened then? A. Then he fell off.
"Q. And fell down? A. Yes."

4. On cross-examination he indicated that the top rail came about to his arm pits, which is borne out by the height of the rail (31 inches) and the boy's size.

5. The complaint alleges that Joe struck the edge of the roof with his head before falling into the alley.

The roof area, laundry facilities and garbage cans were under the control of the defendants and maintained by them for the common use of the tenants. While the defendants did not expressly consent to children playing on the roof, there was evidence from which the jury could have found that children of tenants and their guests often did play on the roof, and that defendants' agent had knowledge thereof. We must assume accordingly for the purpose of this opinion that the defendants knew that children frequently played on the roof. There was no evidence that other children had climbed on or over the railing.

It is plaintiff's primary contention [6] that whether Joe was an invitee, licensee or trespasser, defendants may be found liable under the rule set forth in Restatement, Torts § 339, which reads:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if (a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and (b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and (c) the children because of their youth do not discover the condition or realize the risk involved in inter-

meddling in it or in coming within the area made dangerous by it, and (d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

In Nichols v. Consolidated Dairies of Lake County, 1952, 125 Mont. 460, 239 P.2d 740, 742, 28 A.L.R.2d 1216, the Supreme Court of Montana quotes section 339 with approval as a "statement of facts necessary to satisfy the requirements for application of the attractive nuisance doctrine".[7]

It is well settled that to subject a defendant to liability under section 339, each of the four conditions must be established. Here the evidence is sufficient under clause (a). Does it meet the requirements of clauses (b), (c) and (d)?

The roof area was protected by a railing four feet from its edge, with 2 x 4's 16 inches and 31 inches high. Can it be said that this presented a "condition involving an unreasonable risk of death or serious bodily harm" to children, and that a seven year old boy because of his youth did not "discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it"? On the contrary, Joe was fully aware of the edge of the roof and the drop into the alley. It was clearly visible, and the presence of the railing prevented his coming too near the edge through inadvertence. He had been warned by his mother to keep away from the roof except when accompanied by an

---

6. It is alleged in the complaint that the defendants (a) negligently maintained the lower level of the roof without adequate protection "to prevent falling from the roof" in an area attractive to children of tender age, which facts were known to defendants; (b) that the lower level of the roof was "dangerous and attractive to children of tender age"; and (c) that the defendants failed to place and maintain proper safeguards to prevent injuries to young children who might be attracted to the lower level of the roof.

7. In Nichols v. Consolidated Dairies, etc., a twelve year old boy was injured while playing in a counterweight operated pas-

senger elevator in defendant's grain elevator. The court held that the complaint, which included an allegation that the elevator was allowed to get out of repair so that the safety catch securing the lift and the safety brakes were in a defective condition, was sufficient to state a cause of action under section 339. For further discussion of the "attractive nuisance" doctrine in Montana, see Johnson v. United States, D.C.Mont. 1958, 163 F.Supp. 388, affirmed 9 Cir., 1959, 270 F.2d 488; Gates v. Northern Pacific R. Co., 1908, 37 Mont. 103, 94 P. 751; Gilligan v. City of Butte, 1946, 118 Mont. 350, 166 P.2d 797.

older person, although this fact in itself would not prevent recovery.

Nor can there be any doubt that a seven year old boy of Joe's intelligence realized the danger of falling and the possibility of resulting injury. As the Supreme Court of Pennsylvania, in McHugh v. Reading Co., 1943, 346 Pa. 266, 30 A.2d 122, 123, 145 A.L.R. 319 well said: "No danger is more commonly realized or risk appreciated, even by children, than that of falling; consciousness of the force of gravity results almost from animal instinct. Certainly a normal child nearly seven years of age—indeed any child old enough to be allowed at large—knows that if it steps or slips from a tree, a fence, or other elevated structure, it will fall to the ground and be hurt. It may be that some children, while realizing the danger, will disregard it out of a spirit of bravado, or because, to use the language of the Restatement, of their 'immature recklessness,' but the possessor of land is not to be visited with responsibility for accidents due to this trait of children of the more venturesome type." [8]

Joe's situation is covered precisely by the comment on clause (c) of section 339, which reads:

"e. A possessor of land is * * under a duty to keep so much of his land as he knows to be subject to the trespasses of young children, free from artificial conditions which involve an unreasonable risk of death or serious bodily harm to them. This does not require him to keep his land free from conditions which even young children are likely to observe and the full extent of the risk involved in which they are likely to realize. The purpose of the duty is to protect children from dangers which they are unlikely to appreciate

and not to protect them from harm resulting from their own immature recklessness in the case of known danger. Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it, the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved therein, but none the less chooses to encounter it out of recklessness or bravado."

Following the report of McHugh v. Reading Co. at 145 A.L.R. 319, is an annotation entitled "Liability, under attractive nuisance doctrine or related principle, for injury to children jumping or falling from nondefective and stationary object or structure reached by climbing." After referring to prior annotations on attractive nuisances,[9] and quoting Restatement, Torts § 339, appears this statement:

"In keeping with these generalizations, and especially with those indicating that in order to establish liability the danger must be one which is not obvious to or recognized by the child, decisions within the scope of this annotation are generally to the effect that, under the attractive nuisance doctrine or a kindred principle, liability does not attach to an owner or occupant for an injury to a trespassing child who climbs upon and jumps or falls from a nondefective and stationary structure, at least where the structure is useful and properly located."

The annotation also includes a few cases "which may not be within the scope of the annotation because of the presence in them of such factors as structural

8. See also Esquibel v. City and County of Denver, 1944, 112 Colo. 546, 151 P.2d 757; Augusta Amusements, Inc. v. Powell, 1956, 93 Ga.App. 752, 92 S.E.2d 720; Twist v. Winona & St. Paul R. R. Co., 1888, 39 Minn. 164, 39 N.W. 402; Ewing v. George Benz & Sons, 1947, 224 Minn. 508, 28 N.W.2d 733; 65 C.J.S. Negligence § 29(8)b, p. 466.

9. 36 A.L.R. 34 (supplements in 39 A.L.R. 486; 45 A.L.R. 982; 53 A.L.R. 1344 and 60 A.L.R. 1444). See in particular recapitulation and conclusion at 36 A.L.R. 294.

defects, but to which attention is directed for comparative purposes".

■ The cases upon which plaintiff relies are distinguishable by reason of the presence of additional factors, such as machinery and devices without guards [10] or in a defective condition, [11] stationary objects which are out of repair or in a deteriorated condition,[12] latent dangers,[13] or concealed hazards in the nature of a trap.[14] None of these conditions are present here, and it is my conclusion that plaintiff has failed to meet the requirements of clauses (b) and (c) of section 339.

Nor does plaintiff come within the requirement of clause (d), i. e. where "the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein". The comment on clause (d) reads:

"In determining whether a particular condition maintained by a possessor upon land which he knows to be subject to the trespasses of children involves an unreasonable risk to them, the comparison of the recognizable risk to the children, with the utility to the possessor of maintaining the condition, is of peculiar importance. The public interest in the possessor's free use of his land for his own purposes is of great importance. A particular condition is, therefore, regarded as not involving unreasonable risk to trespassing children unless it involves a grave risk to them which would be obviated without any serious interference with the possessor's legitimate use of his land * * *."

Can it be said here that the condition of the roof involved a "grave risk" to children which could "be obviated without any serious interference with the possessor's legitimate use of his land"? The defendants maintained the roof area for the convenience of tenants in doing their laundry and disposing of their garbage. It was not designed as a play area, although children did play there with the knowledge of defendants' agent. In placing the railing four feet from the edge of the roof there was a space for garbage cans which made them available to both the tenants and garbage collector. Conceivably, at relatively little expense, defendants could have built a higher fence with a mesh wire. If the fence were high enough that the tenants could not reach the garbage cans from inside the rail, a gate would have been required. This would have presented the problem of keeping the gate closed and secured, as well as the necessity of going onto the ledge and increasing the danger to children and adults alike. While a wire mesh fence would make the roof safer for very small children who could not climb the fence, it is unlikely it would improve the situation for a seven year old boy who was inclined to take the risk and climb on or over the fence. See for example, Johnson v. United States, D.C.Mont.1958, 163 F.Supp. 388, where a four year old

10. Crane v. Smith, 1943, 23 Cal.2d 288, 144 P.2d 356 (where three year old child stuck her finger in nozzle of coffee grinder in defendant's grocery store.)

11. Nichols v. Consolidated Dairies, etc., supra.

12. Freeman v. Mazzera, 1957, 150 Cal. App.2d 61, 309 P.2d 510 (lattice work on stairway); Alvarado v. Anderson, 1959, 175 Cal.App.2d 166, 346 P.2d 73 (loose and wobbly diving board tower in an amusement area); Plotkin v. Winkler, 1944, 323 Ill.App. 181, 55 N.E.2d 545 (rotten, unnailed and widely spaced boards covering an air shaft).

13. Large v. Williams, 1957, 154 Cal.App. 2d 315, 315 P.2d 919 (unstable, discarded boiler frame constructed of heavy pipe); McGill v. United States, 3 Cir., 1952, 200 F.2d 873 (abandoned coast guard tower in a city beach area).

14. Reynolds v. Wilson, 1958, 51 Cal.2d 94, 331 P.2d 48 (partially filled swimming pool in which algae had formed, making the sloping bottom so slick it was extremely difficult for a person to keep his footing); Davies v. Land O'Lakes Racing Association, 1955, 244 Minn. 248, 69 N.W.2d 642 (newly constructed rainwater collecting pits with perpendicular sides filled to overflowing with no indication of their presence).

boy climbed over a seven foot mesh wire fence with three strands of barbed wire on top. It was Joe's act of climbing on or over the railing, and not the lack of a guard rail or any defect in the rail which resulted in his fall.[15]

The rule of section 339 does not afford plaintiff a basis for recovery. While this section deals specifically with trespassers, many of the cases construing it involve child invitees or licensees. Defendants argue that Joe was either a trespasser or licensee. In my opinion, however, he was an invitee. Does the fact that he was an invitee and the child of a tenant place him in a more favorable position?

 It is well settled in Montana that "where the owner of premises leases parts thereof to different tenants, reserving other parts for the common use of the different tenants, it is his duty to use reasonable care to keep the parts reserved for common use reasonably safe". Lake v. Emigh, 1948, 121 Mont. 87, 190 P.2d 550, 554, and cases there cited.[16] In Lake v. Emigh the plaintiff was injured when a clothesline provided by the landlord for the common use of tenants broke. The jury was instructed that the landlord had a duty to keep the clothesline in a reasonably safe condition for use, but in two instructions the court called attention to the fact that the defect existing in the facility was not apparent at the time the premises were rented. The case accordingly is distinguishable from the instant case in that (1) it involved a defective facility, and (2) the defect was not apparent to the tenant when the premises were leased.[17]

██ Lake v. Emigh is consistent with the general rule that a landlord is not ordinarily required to make a structural change in any condition which is open and obvious to the tenant when the premises are leased, unless required by the rental contract. He is liable for any negligence in failing to make repairs made necessary by wear, breakage and decay and for unsafe conditions which are concealed or in the nature of a trap.[18]

15. The situation here is distinguishable from those cases where dangerous conditions could be replaced at slight expense by less hazardous conditions which would serve the same function. See, for example, Knox v. City of Granite Falls, 1955, 245 Minn. 11, 72 N.W.2d 67, 53 A.L.R.2d 1091 (open flame flares at street excavation where battery operated flares were available); Kahn v. James Burton Co., 1955, 5 Ill.2d 614, 126 N.E.2d 836 (lumber stacked in unstable manner, with pieces to be used first (heavier pieces) on top); Hyndman v. Pennsylvania Railway Co., 1959, 396 Pa. 190, 152 A.2d 251 (inadequately protected high voltage electrical transformer).

16. This case also cites with approval Restatement, Torts § 360, which reads: "A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sublessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

17. The holding in Lake v. Emigh is also consistent with the rule in Montana with respect to invitees, which was well summarized in Cassady v. City of Billings, 1959, 135 Mont. 390, 340 P.2d 509, 510: "It is well-established in Montana that a landowner is obligated toward an invitee to either use ordinary care to have the premises reasonably safe, or to warn the invitee 'of any hidden or lurking danger therein'. Milasevich v. Fox Western Montana Theatre Corp., 118 Mont. 265, 270, 165 P.2d 195, 197, and see Restatement, Torts, Negligence, § 343. He is not an insurer against all accidents and injuries to such persons while there. Milasevich v. Fox Western Montana Theatre Corp., supra."

18. Lindsey v. Kentucky Development Co., 1942, 291 Ky. 253, 163 S.W.2d 499; Ullrich v. Kintzele, Mo.App., 297 S.W. 2d 602; Watwood v. Fosdick, 1931, 212 Cal. 84, 297 P. 881; Chapman v. Title Ins. & Trust Co., 1945, 68 Cal.App.2d 745, 158 P 2d 42; Restatement, Torts §§ 356, 357, 358.

This rule has been held applicable to minor children of the tenant. In Harrison v. Mortgage Investment Co., 1932, 61 App.D.C. 155, 58 F.2d 881, the infant plaintiff fell from an iron stairway leading from an apartment leased to her parents. In holding that the trial court properly sustained a demurrer, the court said in part:

"The whole case, therefore, turns upon the question whether the landlord should have anticipated the use of the stairways by an unaccompanied child and have so protected or screened the openings or sides that it would have been practically impossible for an injury to occur in such use as the result of falling through or over the sides of the steps. We know of no rule in the relationship of landlord and tenant which imposes such a duty.

" * * * and we think there is no law which imposes on the landlord a duty to provide safeguards not otherwise necessary in the ordinary use of the property because of the possibility of injury to a small child. Here the parents leased the apartment with knowledge of the structural condition of the stairway. They made no complaint and exacted no promise to change the condition, and thereby they assumed whatever danger there was in the use of the stairway so long as it was not allowed to get into disrepair. Neither the one nor the other of them would now be heard to complain of an injury resulting alone from the structural character of the stairs, and, in our opinion, their infant child stands in no better position. She was using

the premises in the right of her parents as tenants, and if the circumstances are such that they cannot recover, neither can she. (Citing cases)" [19]

California has followed a more liberal rule with respect to children of tenants. Plaintiff relies upon a series of cases in which the court held that the child was an invitee of the landlord, that the attractive nuisance doctrine was not applicable, and that liability was "based on the general principle that the person in possession of premises must take such precautions for the safety of his business invitees as are reasonable under all the circumstances, considering their relation, the burden of the interference with his own affairs and the danger to the invitees to be anticipated, and that special caution is required in behalf of invitees of immature age whose inability to appreciate and propensity to ignore certain dangers he ought to consider". Roberts v. Del Monte Properties Co., 1952, 111 Cal.App.2d 69, 74, 243 P.2d 914, 917, and quoted with approval in Gardner v. Stonestown Corporation, 1956, 145 Cal.App.2d 405, 302 P.2d 674.[20]

All of the California cases, however, are distinguishable on the facts. Plaintiff relies most strongly on Gardner v. Stonestown Corporation, supra, where the child of a tenant was injured while playing on a ramp in an area customarily used for play by children of the tenants of an apartment house. The following excerpt from the court's opinion illustrates the distinction from the instant case [145 Cal.App.2d 405, 302 P.2d 679]: "The evidence shows that the ramp was built with loose flooring. Gail's injury was caused by her getting her foot caught between two loose boards. While it is

---

19. See also Lindsey v. Kentucky Development Co., supra, note 18; Guidry v. Hamlin, La.App.1939, 188 So. 662; Jones v. City of Aberdeen et al., D.C.Md. 1956, 138 F.Supp. 727, affirmed 4 Cir., 1957, 241 F.2d 26; 52 C.J.S. Landlord and Tenant § 419, pp. 66–68, which reads in part: "With respect to children of the tenant it has been held that the landlord may assume that those in authority will protect them and prohibit them from wandering in such places where they might be injured, and that the landlord, because of the possibility of injury to children, is not required to provide safeguards not otherwise necessary."

20. See also Harper v. Vallejo Housing Authority, 104 Cal.App.2d 621, 232 P.2d 262; Freeman v. Mazzera, 1957, 150 Cal. App.2d 61, 309 P.2d 510.

possible that the cracks between the loose boards may have varied in size from time to time, there is no contention that the boards were ever nailed. Thus, a reasonable inference is that the dangerous condition existed for the 5 days to a week that the ramp was there. Stonestown, knowing of the presence of the ramp in an area where it knew that children played, was under a duty to see that the ramp was reasonably safe, as it is presumed to know that children would play there." (quoting Restatement, Torts § 360, set forth in note 16) [21]

■ Had Joe's fall resulted from a defect in the railing, the California cases would be applicable. His fall, however, was not due to the absence of a guardrail or a defective railing, but rather to his own act in climbing upon a guardrail four feet from the edge of the roof. The danger of climbing upon this railing was obvious to a seven year old boy. The possessor of land, including a landlord, is not required to make his premises "child proof" by providing all possible safeguards against injury to children on his premises. Nor is he an insurer of their safety. The defendants here were required to exercise reasonable care to make the roof reasonably safe for the use of tenants, including children playing on the roof. This they have done. Joe's injury did not result from his playing on the roof, but from his climbing on the guardrail. Possessors of land are not liable for injuries to children who have overcome obstacles and safeguards and placed themselves in a place of danger.[22]

I am unable to find that Joe's injury was proximately caused by the breach of any duty owed to him by the defendants. The motion for directed verdict accordingly must be granted. Prior to submission to the jury, it seemed advisable to defer a ruling on the legal questions herein discussed. Now that the jury has failed to agree, no useful purpose would be served by a retrial prior to final determination of the questions considered in this opinion. If my conclusions are erroneous and the appellate court should order a new trial, all issues may then be submitted to the jury in accordance with the views of the appellate court.

---

21. In Roberts v. Del Monte Properties Co., supra, the seven year old child of a guest in defendant's hotel was injured while playing on a pile of mattresses in a hallway. The mattresses were piled adjacent to the window and the boy was injured when "he accidentally tumbled backwards towards the open window behind the pile, the screen in it gave way, and the boy and screen fell down into a patio". Negligence was predicated on the piling of the mattresses near the open and unprotected window.

22. The rule here applicable was well stated by the Supreme Court of Minnesota in Kayser v. Lindell, 1898, 73 Minn. 123, 75 N.W. 1038, where a three and one-half year old child of a tenant fell off a retaining wall in the rear of the yard maintained by the landlord for the common use of tenants. The retaining wall extended one foot above the level of the yard and dropped off seven feet into the alley beyond. In affirming a judgment for the defendant, the court said: "While the owner of the premises may owe more duty to a child than to an adult coming upon his premises by implied invitation, yet he is not bound to guard every stairway, cellarway, retaining wall, shed, tree and open window on his premises so that a child cannot climb to a precipitous place and fall off."